

$400

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BERNADETTE M. BIBBER,           )
                                )
        Plaintiff,              )
                                )
    v.                          )      Case No.
                                )
NATIONAL BOARD OF OSTEOPATHIC   )
MEDICAL EXAMINER, INC.          )
                                )      **15    4987**
        Defendant.             )
                                )

## COMPLAINT

Plaintiff, Bernadette M. Bibber ("Ms. Bibber") alleges as follows:

1.      This action challenges the discriminatory denial of appropriate testing accommodations as requested by plaintiff, Ms. Bibber, on the Comprehensive Osteopathic Medical Licensing examination, Level 1 ("COMLEX I"). The discrimination challenged herein has deprived plaintiff, Ms. Bibber a person with disabilities, from taking the COMLEX I examination on a level playing field with her non-disabled peers. These civil rights violations are ongoing and include discrimination and failure to provide appropriate accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. as amended ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq. ("LAD"). Immediate and permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the COMLEX I.

2.      Defendant, National Board of Osteopathic Medical Examiner (NBOME) has failed to provide Plaintiff appropriate testing accommodations, which includes

1

extended time (50% or time and a half) on COMLEX I examination. Plaintiff furnished
Defendant with extensive documentation of her disabilities and entitlement to
accommodations as set forth in Defendant's policies for documentation to support
requests for test accommodations. Plaintiff brings this action to enforce her statutory
rights to appropriate accommodations and equal educational opportunities under the
ADA and LAD.

3.      Defendant administers the COMLEX I, which is a standardized
examination and requirement for medical licensure. COMLEX I is often required for
osteopathic medical school graduation and residency eligibility in the United States.
Defendant has the legal, educational and professional responsibility to offer appropriate
testing accommodations to individuals with disabilities on the COMLEX I. Such
accommodations, which are neither expensive nor difficult to provide, allow individuals
with learning disabilities and other cognitive impairments, like Plaintiff, to demonstrate
their aptitude and skill level.

## JURISDICTION

4.      These claims arises under the Americans with Disabilities Act, as
amended, 42 U.S.C. §§12101, and this Court has subject matter jurisdiction based on a
federal question under 28 U.S.C. §§1331 and 1343(a)(4). This Court also has jurisdiction
pursuant to 42 U.S.C. §2000a, providing for civil actions in this Court by any person
subject to discrimination on the basis of disability in violation of Title III of the ADA and
under 42 U.S.C. §1343. This Court further has supplemental jurisdiction pursuant to 28
U.S.C. §1367.

5.      This Court has jurisdiction to issue a declaratory judgment pursuant to 28

U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28

U.S.C. §1391, Defendants executive offices are within this District. Further, Defendant

grades certain COMLEX examinations in this District and otherwise transacts business

within this district.

## PARTIES

7.      Ms. Bibber is entering her third year of medical school at Rowan

University School of Osteopathic Medicine (RowanSOM). She is a resident of and

attends medical school in New Jersey.  Along with the other students in Ms. Bibber's

class, she intended to take the COMLEX I shortly after the completion of her second year

of medical school; however, due to Defendant's discriminatory denial, she was not able

to take her examination along with her fellow classmates.

8.      NBOME is a non-profit corporation organized under the laws of the State

of Indiana. NBOME has corporate and executive offices located at 101 West Elm Street,

Conshohocken, Pennsylvania. The NBOME, among other things, prepares and

administers the COMLEX, which is a multi-step examination (including COMLEX I,

COMLEX II and COMLEX III), the successful completion of each step is required for

osteopathic medical licensure in the United States. Additionally, ones level of

performance on the COMLEX examinations is a prominent factor used in the highly

competitive candidate selection process implemented by residency training programs.

9.      Defendant is a private entity that offers examinations related to

applications and credentialing to postsecondary education, professional and trade

3

purposes and as such is subject to the non–discrimination and appropriate accommodation requirements of the ADA and LAD. The Defendant offers the administration of the COMLEX I throughout the country, including New Jersey where Plaintiff intends take the examination.

10.    Defendant engages in business in Pennsylvania and in this judicial district and this action arises from those business activities.

## FACTUAL ALLEGATIONS

11.    Ms. Bibber is thirty-years old and entering her third year (of a four year program) of medical school and is expected to graduate in May 2017. In order for Ms. Bibber to obtain her medical licensure, she is required to pass separate phases of the COMLEX, commonly referred to as COMLEX Level 1, COMLEX Level 2-Cognitive Evaluation, COMLEX Level 2-Performance Evaluation and COMLEX Level 3. Ms. Bibber is preparing to take the COMLEX I, which she intends to take New Jersey.

12.    Ms. Bibber is affected by learning disabilities including Dyslexia[1], visual perceptual impairments and Attention Deficit Hyperactivity Disorder (ADHD)[2]. These

---

[1] Dyslexia is a neurobiologically-based language impairment defined by a difficulty in reading that does not result from global intellectual or motivational deficits. Dyslexia is a specific learning disability that is neurobiological in origin. It is characterized by difficulties with accurate and/or fluent word recognition and by poor spelling and encoding abilities. Their difficulties typically result from a deficit in the phonological component of language that is often unexpected in relation to other cognitive abilities and the provision of effective classroom instruction. Lyon, G. R., Shaywitz, S. E. & Shaywitz, B. A. (2003). A definition of dyslexia. Annals of Dyslexia, 53, pp. 1-14.

[2] ADHD is a neurodevelopmental disorder that begins to affect individuals as children and adolescents and often continues into adulthood. Individuals affected by ADHD are easily distracted, forget things, have difficulty focusing, become bored with tasks, have difficulty with organization, trouble completing schoolwork and homework, and difficulty processing information as quickly as others do. *See* American Academy of Pediatrics, *Clinical Practice Guideline: Diagnosis and Evaluation of the Child with Attention-Deficit/Hyperactivity Disorder, Pediatrics*, Vol. 105, No. 5, pg. 1158 (May 2000); Edward Hallowell & John Ratey, Driven to Distraction, at pg. 70-72 (1994) and "National Institute of Mental Health:What Is Attention Deficit Hyperactivity Disorder (ADHD, ADD)?"
http://www.nimh.nih.gov/health/topics/attention-deficit-hyperactivity-disorder-adhd/index.shtml. (last visited August 13, 2015).

4

impairments individually and collectively cause difficulty in the areas of reading,
spelling, slow processing speed, working memory, inattention, and sustaining focus and
concentration.

13.     Ms. Bibber's conditions substantially impair the major life activities of
thinking, learning, reading, concentrating, studying, writing, processing information and
taking standardized examinations under timed conditions.

14.     If Ms. Bibber does not receive appropriate accommodations on the
COMLEX I, her examination results will not reflect her aptitude and achievement level
as required by law. Moreover, without the appropriate accommodations, Ms. Bibber may
score poorly or fail the examination, which would adversely impact her ability to
graduate medical school, obtain medical licensure and/or qualify for a residency program.

15.     Ms. Bibber's situation is further exacerbated by the fact that RowanSOM
requires a student to take and pass the COMLEX I in order to begin the third year at
RowanSOM.

### Ms. Bibber's History of Disability and Accommodations

16.     As early as kindergarten, Ms. Bibber's parents noticed that she had
difficulty learning in school, most notably she encountered difficulty learning the
alphabet. Consequently, she was retained in kindergarten for a second year.

17.     In first grade, Ms. Bibber continued to have struggles with letters and
words and reading, including transposing of letters and numbers, writing 5s and 3s
backwards and confusing 6s and 9s. She was evaluated by her school's Child Study Team
and was subsequently determined to have a disability under the Individuals With
Disabilities Education Act, 20 U.S.C. §1400 *et. seq* (IDEA). Ms. Bibber was classified as

having a Specific Learning Disability in the area of reading and was issued an Individualized Education Program (IEP) pursuant to the IDEA, which provided specially designed instruction and accommodations.

18.     From first through sixth grades, Ms. Bibber receive significant support in school including one-on-one instruction, extending time for tests and quizzes and a reader to read questions on standardized tests.

19.     In addition to the support she received in school, Ms. Bibber also received considerable support outside of school with her learning difficulties. In fifth grade, she was assessed at the Total Learning Center, which concluded that she had Dyslexia, which is a specific type of reading impairment. Ms. Bibber received direct instruction in the Wilson Reading Program, which is a direct, multi-sensory instruction, design to develop compensatory strategies and remediate reading deficits. Ms. Bibber attended the Wilson Program at the Total Learning Center three times a week from fifth through seventh grades.

20.     At least every three years during Ms. Bibber's elementary and middle school education, her school's Child Study Team evaluated her and continued to conclude that she was a person with a disability under the category of Specific Learning Disability.

21.     In eighth grade, Ms. Bibber in lieu of an IEP was issued a 504 Plan pursuant to the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (Section 504). The 504 Plan provided various accommodations, which included extended time on tests, study guides, copies of notes from teachers and/or other students, and no penalties for spelling errors. Ms. Bibber was issued a 504 Plan each year through the completion

of high school, which provided for the same accommodations including extended time on tests and quizzes.

22.     Throughout high school, Ms. Bibber continued to receive extensive tutoring and direct instruction in reading in order to teach her compensatory strategies and diminish her impaired reading.

23.     During high school she received 50% extended time on multiple standardized college entrance examinations including the PSAT, SAT, SAT Subject Tests and AP examinations.

24.     In 2003, Ms. Bibber entered Colby College. Colby College approved several accommodations including extended time (50%) on examinations, notes supplied for classes, extended time to complete written assignments and verbal testing to replace written examinations.

25.     In 2004, during Ms. Bibber's sophomore year of college, Phoebe Liss, Ed.D. conducted a brief evaluation in order to determine whether Ms. Bibber qualified for an accommodation in the form of a waiver from Colby College's foreign language requirement. Based on her evaluation, Dr. Liss recommended several accommodations for school including extended time on examinations and a waiver of any foreign language requirement. She further noted that Ms. Bibber experiences symptoms of ADHD and recommended a further evaluation for diagnosis and treatment.

26.     Ann Schoenthaler-Ervin, Ph.D. evaluated Ms. Bibber in November 2005 during Ms. Bibber's junior year for suspected ADHD. Based on Dr. Schoenthaler-Ervin's evaluation, she concluded that Ms. Bibber is affected by ADHD and recommended psychopharmacological intervention.

27.    In the Spring 2007, Ms. Bibber graduated from Colby College.

28.    In Fall 2007, Ms. Bibber attended Kennebec Valley Community College. She was approve for and received accommodations for her disability including 50% extended time on examinations and notes supplied for classes.

29.    Ms. Bibber attended graduate school at Rutgers University Graduate School of Biomedical Sciences during the 2010-2011 school year, where she was conferred a Masters in Biomedical Science. Rutgers approved and provided Ms. Bibber with accommodations for her disability, which included 50% extended time for examinations.

30.    In the Summer 2013, Ms. Bibber commenced attending RowanSOM.

31.    In the Summer 2013, shortly after starting medical school, the Rowan University Assessment and Learning Center conducted an evaluation to determine whether Ms. Bibber requires accommodations in medical school and on standardized tests. Christine Williams, Ed.S, Nationally Certified School Psychologist and Maria L. Palmieri, M.A., NJ Certified Learning Consultant respectively conducted a psychological evaluation and learning assessment.

32.    The evaluation team concluded that Ms. Bibber was eligible for accommodations under Section 504. The team reported that Ms. Bibber meets the criteria for ADHD and a Reading Disorder (comprehension and fluency). The evaluation team recommended that Ms. Bibber's 504 Plan provide several accommodations including but not limited to: extended time for testing, written directions for assignments, and use of a tape recorder or auditory taping device allowed for class lectures.

8

33.     RowanSOM approved Ms. Bibber's 504 Plan and provided her with accommodations including 50% extended time.

34.     During her matriculation at RowanSOM, Ms. Bibber has taken numerous objective examinations and has utilized 50% extended time in accordance with her 504 Plan.

35.     The NBOME prepares, distributes and scores the Comprehensive Osteopathic Medical Self-Assessment Examination (COMSAE), which is a three phase computerized examination, that corresponds to the three levels of the COMLEX and is utilized to prepare medical students for each phase of the COMLEX.

36.     RowanSOM administers and proctors the COMSAE to its students and requires that its students pass the COMSAE Phase 1 as a prerequisite to taking the COMLEX 1.

37.     Ms. Bibber was administered the COMSAE Phase 1 at RowanSOM and was approve for and received 50% extended time.

38.     The NBOME prepares, distributes and scores the Comprehensive Osteopathic Medical Achievement Test (COMAT), which are a series of distinctive subject matter exams in various disciplines of osteopathic medicine.

39.     RowanSOM administers and proctors the COMAT examinations to its students and requires that its students pass each discrete subject area as a prerequisite to passing the corresponding rotation.

40.     Ms. Bibber was administer the Osteopathic Principles and Practice COMAT and the Psychiatry COMAT at RowanSOM and was approved for and received 50% extended time.

9

41.    Despite her long history of disabilities and struggles, Ms. Bibber has been able to achieve considerable academic success due in large part to accommodations, extensive tutoring, special education and extensive amounts of studying and persistence.

### The COMLEX I

42.    The COMLEX is designed to assess the osteopathic medical knowledge considered essential for osteopathic generalist physicians to practice osteopathic medicine.

43.    The COMLEX I examination consists of two, four hour computer based test sessions during one day, containing a total of 400 test questions. The test questions are predominantly in the single best answer, multiple choice or extended matching items formats.  Some questions involve audio-visual components.

44.    Ms. Bibber must pass COMLEX I in order to maintain her eligibility to proceed further in medical school. Furthermore, passing the COMLEX I is required to graduate RowanSOM, to enter into a medical residency program and to take the COMLEX II and COMLEX III examinations. Furthermore, a failed attempt or poor performance on the COMLEX I can adversely impact her acceptance into a residency training program.

### NBOME' s Denials of Ms. Bibber's Request for Accommodations

45.    In or about February 2015, Ms. Bibber submitted to the NBOME, an application for accommodations on the COMLEX I. Ms. Bibber requested the accommodations of 50% extended time. Included with Ms. Bibber's request for accommodations were the following documents supporting her request for accommodations:

10

        a.      COMLEX Level 1 Request for Accommodations completed and signed by Ms. Bibber on December 20, 2014.

        b.      COMLEX Level 1 Osteopathic Medical School Questionnaire, signed on February 4, 2015 by Linda Boyd, D.O., RowanSOM Senior Associate Dean, Academic Affairs, certifying that Ms. Bibber receives 50% extended time on examinations.

        c.      Christine  Williams, Ed.S. Psychological Evaluation – August 22, 2013.

        d.      Maria L. Palmieri, M.A., N.J. Certified Learning Consultant, Learning Assessment- August 23, 2013.

        e.      Christine Williams, Ed.S. and Maria L. Palmieri, M.S. Integrated Team Conclusions, September 3, 2013.

        f.      Ann Schoenthaler-Ervin, Ph.D. Psychological Evaluation Report, November 2005.

        g.      Phoebe Liss, Ed.D, Learning Disability Consultant Report, December 31, 2004.

        h.      Ms. Bibber's Addendum to Application for Accommodations with personal statement.

46.     The forgoing documentation provided current and historical evaluations which established that Ms. Bibber has a long and well documented history of learning disabilities that impact her reading, learning, reading comprehension, reading fluency, thinking and concentration at the same rate, condition and manner as most people. Moreover, the foregoing documentation provides proof that Ms. Bibber previously received and currently receives 50% extended time accommodations in school and on several standardized examinations.

47.     By letter dated April 2, 2015, the NBOME rejected Ms. Bibber's request for accommodations on the purported basis that the documentation did not demonstrate that she is substantially limited in a major life activity, when compared to most people in

the general population and that the documentation purportedly did not demonstrate how the behaviors have substantially limited Ms. Bibber functioning relative to her ability to access the COMLEX under standardized time conditions.

48.     By letter dated May 6, 2015, Hillary Freeman, Esquire, on behalf of Ms. Bibber, submitted an appeal and request that the NBOME review and reconsider the previously provided documentation and further consider additional documentation submitted and approve the request for 50% extended time.  The additional documentation submitted included:

a.     Linda Boyd, D.O. RowanSOM Senior Associate Dean, May 4, 2015 letter regarding accommodations at RowanSOM.

b.     Rocco V. Carsia, Ph.D. RowanSOM Faculty, letter stating 50% extended time and separate room accommodation provided in Clinical Integrated Human Anatomy.

c.     Kai Mon Lee, Ph.D. RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Biochemistry.

d.     John Chiesa, D.O., RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Clinical Medicine.

e.     Bernd W. Spur, Ph.D. RowanSOM Faculty, letter stating 50% extended time and a separate room accommodations provided in Pharmacology.

f.     Jennifer A. Fischer, Ph.D. RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Histology.

g.     Susan Muller-Weeks, Ph.D. RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Microbiology.

h.     Vincent DeRisio, D.O. FCAP, RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Pathology.

      i.      Jacqueline M. Kaari, D.O., RowanSOM Faculty, letter stating 50% extended time and a separate room accommodation provided in Pediatrics.

      j.      College Board Accommodation Eligibility Status Report – August 16, 2002, reflecting approval of 50% extended time for the PSAT SAT, SAT II, and AP examinations.

49.     By letter dated May 26, 2015, from Sydney L. Steele, Esquire, NBOME's counsel, NBOME again rejected Ms. Bibber's request for accommodations stating that the additional documentation does not alter the conclusion that Ms. Bibber is not a person with disabilities and that the NBOME is unable to approve the request for testing accommodations.

50.     In June 2015, James Lawrence Thomas, Ph.D. reviewed Ms. Bibber's records and administered several assessments. Dr. Thomas prepared a report dated June 3, 2015 addressed to the NBOME that summarized the records, reported the conclusions from the assessments and responded to the contentions stated in NBOME's April 2, 2014 denial. Dr. Thomas reported that Ms. Bibber scores in the below average range in timed reading comprehension; she has very slow reading comprehension which limits her reading, studying and test taking; she has a well documented history of dyslexia and ADHD; and she has received accommodations of extra time since her earliest years.

51.     Dr. Thomas's June 3, 2015 report confirms that Ms. Bibber has a Specific Learning Disorder with impairment in reading. The report further notes, that she reads in a manner and duration that is below average and that qualifies for 50% extended time on examinations in accordance with the Americans with Disabilities Act.

52.    On or about June 5, 2015, Ms. Bibber submitted her third request for accommodations and appeal of NBOME's denials.  This appeal included the following documentations:

    a.    James Lawrence Thomas, Ph.D. report dated June 3, 2015.

    b.    Diana Hanbury King, Dyslexia Specialist, letter dated November 24, 2003, concerning her brief assessment of Ms. Bibber.

    c.    Monmouth County Vocational School District – 504 Plan dated October 1, 2002- providing *inter alia* extended time on tests.

    d.    Mark R. Serdjenian, Colby College, Associate Dean, letter dated February 11, 2005 noting approval of foreign language waiver.

    e.    Marge Weiner, M.A., Academic Language Therapist, letter dated January 28, 2015, summarizing her assessments and reading therapies from fifth to seventh grades.

53.    For the third time, NBOME issued its blatantly discriminatory denial of Ms. Bibber's request for accommodations in a letter dated June 29, 2015. The NBOME maintained its assertion that the documentation does not provide sufficient evidence of a learning disability in reading.

54.    Defendant is the only entity to have denied that Ms. Bibber has a disability and has rejected her request for 50% extended time.

55.    In spite of never having met Ms. Bibber, never having tested her or never having evaluated her, NBOME ignored multiple qualified professionals who observed and evaluated Ms. Bibber and her history of receiving 50% extended time in school and on other standardized examinations.

56.    The requested accommodations of 50% extended time is necessary to appropriately accommodate the condition and manner of Ms. Bibber's limitations.

Without this accommodation Ms. Bibber will be unable to demonstrate her actual knowledge, skills and abilities on the COMLEX.

57.    Ms. Bibber has an indisputable disability that substantially limits her major life activities of thinking, learning, reading, concentrating, studying, writing, processing information and taking standardized examinations in the same condition and manner as most people. Under the ADA, Ms. Bibber is entitled to the accommodation of 50% extended time. The NBOME's refusal to provide the requested appropriate accommodations is a violation of Ms. Bibber's rights under the ADA.

58.    As a direct and proximate result of NBOME's violation of the ADA, Ms. Bibber will be unable to complete her medical school education in the same manner as her classmates if she does not successfully complete the COMLEX I. Moreover, she will be placed at a distinct disadvantage of competing for quality residency positions if she must take the examination without appropriate accommodations for her disability. She will be irreparably harmed because she will lose the extensive time she has invested in medical school and preparation for the examination; and she will be prevented from competing on a level playing field with other students in medical school.  In the worst case scenario, Ms. Bibber's medical career and dream could end if she is unable to pass the COMLEX I, because the NBOME will not accommodate her disability as required by the ADA.

59.    Ms. Bibber requires the requested accommodations on the COMLEX I examination not to gain an advantage, but to attempt to level the playing field because her functional limitations impact her ability to take this examination that non-disabled test takers do not experience.

15

60.    Ms. Bibber through counsel has notified NBOME of its violation of the

ADA and state law and requested that it remedy this matter by providing the requested

accommodations.  Ms. Bibber through counsel has also advised NBOME of her intention

to file this litigation if the matter is not remedied.

COUNT I – VIOLATION OF THE ADA

61.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth

fully herein.

62.    Plaintiff is an individual with a disability within the meaning of the ADA,

42 U.S.C. §12101 et. seq.  Plaintiff is a qualified individual within the meaning of the

ADA in that she meets all the eligibility criteria for taking the COMLEX I.

63.    Plaintiff requires appropriate accommodations to participate in a fair, full,

and equal basis on the COMLEX examinations. The modifications that Plaintiff needs,

namely 50% extended time, would not impose a fundamental alteration, but would

attempt to level the field and allow her aptitude and abilities to be fairly and accurately

measured.

64.    Defendant administers the COMLEX examinations, which are

examinations related to applications and credentialing for postsecondary education,

professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

65.    The ADA, 42 U.S.C. § 12189, requires Defendant to offer these

examinations in a manner accessible to persons with disabilities.

66.    Title III of the ADA, which is enforced by the U.S. Department of Justice,

states in pertinent part, "It is discriminatory to fail to make reasonable modifications to

16

policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. §12182(b)(2)(A)(ii).

67.     The Department of Justice regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion.  28 C.F.R. §§ 36.309(b) & (c).

68.     The Department of Justice Regulations prohibit Defendant from administering the COMLEX examinations without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

69.     The Department of Justice (DOJ) Regulations require that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan). 28 C.F.R. §36.309(b)(1)(v).

70.     The DOJ's ADA Guidance further provide, "[r]eports from experts who have personal familiarity with the candidates should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or

conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app.
A, at 796.

71.     The DOJ's regulations require: "any request for documentation …is
reasonable and limited to the need for the modification, accommodations, or auxiliary aid
or service requested."

72.     Defendant has discriminated, and continues to discriminate against
Plaintiff on the basis of her disability by denying her an equal opportunity to demonstrate
her aptitude and achievement level on the COMLEX Examinations in violation of the
ADA, specifically 42 U.S.C. §12182, §12189 and 28 C.F.R. §36.309.

73.     Defendant's discriminatory policies and practices violate Plaintiff 's rights
under the ADA and the regulations promulgated thereunder. Defendant's discriminatory
policies and practices include but are not limited to:

    a.     Failure to grant accommodations when Plaintiff submitted the
           requisite documentation and provided documentation of a history
           of comparable accommodations on standardized examinations and
           other academic examinations.

    b.     Failure to give considerable weight to Plaintiff's evaluators.

    c.     Failure to provide a clear explanation for denial.

    d.     Failure to engage in good faith in the interactive process to
           consider and implement effective accommodations to Plaintiff's
           disability.

    e.     Failure to give considerable weight to Plaintiff's prior approval
           and use of accommodations in school and on standardized
           examinations.

    f.     Failure to consider Plaintiff's request for accommodations
           without regard to the ameliorative effects of mitigating measures.

    g.     Failure to conduct a proper review and apply appropriate legal
           standards to Plaintiff's request for appropriate accommodations.

   h.  Placing an extreme burden of proof, beyond what is required by the ADA, to establish Plaintiff's disability or need for accommodations.

   i.  Making unreasonable requests for documentation or requiring documentation that is not relevant to Plaintiff's need for the requested accommodation.

  74.  Plaintiff will be irreparably harmed if the NBOME continues its unlawful refusal to provide her the appropriate test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Plaintiff's ADA rights and compelling the NBOME to provide the requested accommodation, in that:

   a.  Plaintiff's medical school career will be placed on hold because a passing score on the COMLEX I is a prerequisite to continuing her medical school education.

   b.  Given her history with prior examinations, Plaintiff is justifiably concerned that she may not pass the COMLEX I without the additional extra time accommodation to which she is entitled under the ADA.

   c.  Plaintiff's opportunity to engage in her career of choice is effectively on hold until the NBOME is compelled to comply with the ADA.

   d.  Plaintiff will be unable to continue the same pace of her medical school career as her peers if she is unable to pass the COMLEX I at this time;

   e.  Requiring Plaintiff to take the COMLEX I without the extended time accommodation puts her at a distinct disadvantage given her disability;

   f.  Reduced performance on the COMLEX I as a result of not receiving her requested accommodation significantly reduces Plaintiff's future residency and professional career options.

   g.  Plaintiff may face a future expulsion proceedings under her school's policy if she takes and fails to pass the COMLEX I in a timely manner.

75.     NBOME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

76.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the NBOME to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which she is justly entitled.

77.     As a result of the NBOME's violation of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

78.     NBOME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law.  Consequently, Plaintiff is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

## COUNT II – DECLARATORY RELIEF

79.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

80.     A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.  Plaintiff contends that Defendant violated and continues to violate her rights under the Americans with Disabilities Act as amended, 42 U.S.C. sections 12101, *et seq*.  Based upon information and belief, Defendant denies

these allegations, thus declaratory relief is therefore necessary and appropriate.

81.    Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

## COUNT III – VIOLATION OF NEW JERSEY'S LAW AGAINST DISCRIMINATION, N.J.S.A 10:5-1 et. seq.

82.    Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

83.    This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that all claims are related and arise from a common nucleus of operative facts and Plaintiff expects to try all related claims in one judicial proceeding.

84.    Plaintiff is an individual with disabilities within the meaning of N.J.S.A 10:5-4, which prohibit unlawful discrimination against any person because such person is or has been disabled.

85.    The New Jersey Law Against Discrimination further provides that because of discrimination, people suffer personal hardships including economic loss, time loss, physical and emotional stress and trauma and that such harms give rise to legal remedies including compensatory and punitive damages which are available under this act.

86.    The acts and/or omissions of Defendant were intentional and/or done with deliberate indifference to the protected rights of Plaintiff.

87.    Defendant has discriminated, and continues to discriminate against Plaintiff on the basis of her disability by denying her accommodations, which deprives Plaintiff an equal opportunity to demonstrate her aptitude and achievement level on the COMLEX examinations and further depriving Plaintiff the privileges and advantages of taking the COMLEX in a discriminatory free environment.

88.    As a result of the Defendant's violation of the ADA and Law Against

Discrimination, Plaintiff has suffered or will suffer great injury, as set forth in the preceding paragraphs of this Complaint, which are incorporated by reference, and in addition thereto has and will suffer out-of-pocket pecuniary losses, and emotional distress and anguish.

89.    Defendant's conduct constitutes an ongoing and continuous violation of the ADA and Law Against Discrimination.  Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries on Plaintiff. Consequently, Plaintiff is entitled to injunctive relief, compensatory and punitive damages.

## RELIEF REQUESTED

1.    An order compelling the Defendant, or those acting as agents for or in concert with it, to immediately cease and desist from its refusal to accommodate Plaintiff's request for appropriate accommodations on the COMLEX examinations and ordering that the Defendant immediately comply with the ADA and New Jersey Law Against Discrimination by allowing Plaintiff the requested appropriate accommodation on the COMLEX I, which shall included 50% extended time on all sections of the examination, Said accommodation shall also be made applicable to all of phases of the COMLEX examinations.

2.    Make the above order permanent and that such order be made applicable to all future examinations administered by Defendant and taken by Plaintiff.

3.    An order granting such other injunctive relief as may be appropriate.

4.    An order granting declaratory relief.

5.    An order awarding compensatory and punitive monetary damages.

22

6.      An award for attorney fees, costs, and expenses of suit incurred herein.

7.      Award for such other and further relief as the Court may deem just and

proper.

Respectfully submitted

Dated: September 3, 2015                              _____/s/____CW4713_____
                                                     Charles Weiner, Esquire
                                                     PA Attorney I.D. # 52926
                                                     LAW OFFICE OF CHARLES WEINER
                                                     Cambria Corporate Center
                                                     501 Cambria Avenue
                                                     Bensalem, PA 19020
                                                     Tel:  (267) 685-6311
                                                      Fax:  (215) 604-1507
                                                     charles@charlesweinerlaw.com