## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| BERNADETTE M. BIBBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-4987 |
| | ) | |
| NATIONAL BOARD OF OSTEOPATHIC | ) | |
| MEDICAL EXAMINER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, Bernadette M. Bibber (Bibber) presents herein this Motion for Preliminary Injunction, Brief, Declarations and Exhibits in support thereof and prays as follows:

1.    Plaintiff commenced a civil action ("Complaint") on September 4, 2015 against the National Board of Osteopathic Medical Examiners (NBOME) for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et. seq.  The Complaint is incorporated herein by reference as if set forth fully herein at length.

2.    Plaintiff is requesting appropriate accommodations when taking the Comprehensive Osteopathic Medical Licensing Examination-Level 1 (COMLEX I) in the fall of 2015 because she is affected by learning disabilities including Dyslexia, visual perceptual impairments and Attention Deficit Hyperactivity Disorder (ADHD).

3.       Plaintiff is a person with disabilities and is substantially limited in the major life activities of reading, visual perception, thinking, concentrating, learning, organizing, cognitive processing, as well as the major bodily functions of the brain and the neurological system.

4.       In February 2015, Plaintiff provided Defendant with considerable documentation including current and prior psychoeducational evaluations and reports from leaning specialists, which establishes that she is a person with a disability and that she has received accommodations of extended time on tests throughout her entire education and on standardized exams. Ms. Bibber requests an accommodation of time and half (50%) extended time.

5.       By letter dated April 2, 2015, the NBOME denied that Ms. Bibber is a person with disabilities and rejected Plaintiff's request for accommodation.

6.       By letter dated May 6, 2015, Ms. Bibber's former counsel, submitted an appeal of NBOME's denial of accommodations. Through counsel, Ms. Bibber submitted additional documentation, which included proof of her current accommodations in medical school and on the College Board examinations.

7.       By letter dated May 26, 2015, from NBOME's attorney, the NBOME maintained its denial that Ms. Bibber is a person with disabilities and its rejection of Ms. Bibber's request for accommodations.

8.       By letter dated June 5, 2015, Ms. Bibber submitted to Defendant additional documentation supporting her request for accommodations, including a recent neuropsychological evaluation recommending extended time on the COMLEX and additional documentation reflecting earlier academic impairment and accommodations.

9.      For the third time, NBOME rejected Ms. Bibber's request for accommodations under cover letter dated June 29, 2015.

10.      Defendant is the only entity to have denied that Ms. Bibber has a disability and is entitled to 50% extended time on tests or exams.

11.      Plaintiff, pursuant to Fed. R. Civ. P. 65, respectfully moves this Honorable Court to grant a preliminary injunction requiring Defendant to provide her with the appropriate testing accommodations of extended time (50%) on all sections of the COMLEX.

12.      Because Plaintiff must take the COMLEX I in January 2016, in order to advance in medical school and to participate in the the residency match and because of the extreme prejudice and irreparable harm that Plaintiff will suffer if she is not accommodated on the COMLEX I, she now seeks an Order from this Court granting her motion to compel the Defendant to provide the requested appropriate accommodations.

13.      There is no adequate relief available at law.

14.      In support of this Motion, Plaintiff submits the annexed Brief; Declarations and Exhibits, which are incorporated by reference.

WHEREFORE, for the reasons stated in the Complaint which are incorporated by reference as if fully set forth herein, along with the annexed Brief, Exhibits and Declarations, Plaintiff respectfully requests that this Court grant her motion for injunctive relief by compelling the Defendant to provide the requested appropriate accommodations accommodation.


Date: January 8, 2016                    Respectfully submitted


                                         /s/Charles Weiner_____
                                         Charles Weiner, Esquire
                                         LAW OFFICE OF CHARLES WEINER
                                         Cambria Corporate Center
                                         501 Cambria Avenue
                                         Bensalem, PA 19020
                                         Tel:  (267) 685-6311
                                          Fax:  (215) 604-1507
                                         charles@charlesweinerlaw.com

                                         ATTORNEY FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| BERNADETTE M. BIBBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-4987 |
| | ) | |
| NATIONAL BOARD OF OSTEOPATHIC | ) | |
| MEDICAL EXAMINER, INC. | ) | |
| | ) | |
| Defendant. | ) | |

_____ )


**PLAINTIFF'S BRIEF IN SUPPORT**
**OF MOTION FOR PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiff, Bernadette Bibber incorporates by reference, Plaintiff's Motion for Preliminary Injunction[1] as if set forth fully herein at length.  Ms. Bibber has brought an action against the National Board of Osteopathic Medical Examiners (NBOME) for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, et. seq.   Ms. Bibber, an individual with disabilities, has requested appropriate testing accommodations when taking the Comprehensive Osteopathic Medical Licensing Examination – Level 1 (COMLEX I), which is prepared and administered by the NBOME.  Because Ms. Bibber has a learning disability that affects her reading, the speed at which she reads and processes information, she needs the accommodation of 50% extended time (also referred to as time and a half) on the COMLEX I, in order to best ensure that the results of the COMLEX I reflect her aptitude or achievement level and not her disability.

[1] All Declarations and Exhibits referenced herein are incorporated by reference and filed along with the Motion for Preliminary Injunction.

Ms. Bibber is a bright and talented young woman who has struggled throughout her entire education with a learning disability. Since February 2015, Ms. Bibber has made several requests to Defendant for accommodations pursuant to the ADA and provided the requisite documentation for accommodations.  Despite extensive historical and current documentation substantiating her disability and need for accommodations, Defendant has set up barriers by repeatedly denying her valid requests for testing accommodations.

The requested accommodations, specifically 50% extended time, is necessary to best ensure that the COMLEX I is administered in a manner that provides Ms. Bibber an equal opportunity to demonstrate her aptitude and achievement level.  The ADA prohibits entities such as the Defendant from discriminating against people with disabilities in the administration of examinations such as the COMLEX I. 42 U.S.C. §12189.

 Without the requested accommodations, Ms. Bibber will be deprived of the benefit of testing that accurately reflects her abilities and aptitude; she will lose the benefit of extensive preparation and study for the COMLEX I, she will be denied the opportunity to compete with the other medical students on a level playing field; and she will be denied the chance she deserves, and that every other medical student without a disability has, to realize her life's ambition. Ms. Bibber must take the COMLEX I no later than January 31, 2016, and because of extreme prejudice resulting in irreparable harm that Ms. Bibber will suffer if she is not properly accommodated on the COMLEX I, she seeks an order from the court granting her motion to compel the Defendant to provide the requested appropriate accommodations.

## II.    STATEMENT OF FACTS

Ms. Bibber is affected by learning disabilities including dyslexia, visual perceptual impairments and attention deficit hyperactivity disorder (ADHD), which substantially impairs the major life activities of reading, spelling, cognitive processing speed, working memory, attention and concentration.  On lengthy academic tasks and/or examinations, which are strictly timed, she requires extra time to take the examination. Defendant NBOME has on multiple occasions denied Ms. Bibber's requests for additional time (50% extended time) while taking the COMLEX I, contrary to and in spite of Ms. Bibber's extensive documentation supporting her request for accommodations. In denying Ms. Bibber's requests, the NBOME second guesses the conclusions of multiple professionals who have evaluated or treated Ms. Bibber's disability first – hand. See Exhibits 1, 2, 3, 4, 5, and 6.

### A.    Ms. Bibber's Disability and History of Accommodations

1.    History of Prior Accommodations

Bernadette M. Bibber is a 30-year-old medical student in her third year with graduation expected in May 2017. She is currently attending the Rowan University School of Osteopathic Medicine (RowanSOM). Declaration of Bernadette M. Bibber (Bibber Decl.) ¶ 1. Ms. Bibber is affected by learning disabilities including dyslexia, visual perceptual impairments and ADHD. Bibber Decl. ¶ 2-6; Declaration of James Lawrence Thomas, Ph.D. (Thomas Decl.) ¶ 5. Dyslexia is a neuro-biologically based language impairment defined by difficulty in reading that does not result from global intellectual or motivational deficits. Dyslexia is a specific learning disability that is characterized by difficulties with accurate and/or affluent word recognition and by poor

spelling and encoding abilities. [Shaywitz]. Thomas Decl. ¶ 7. ADHD is a childhood disorder, which can continue into adolescence and adulthood. Symptoms include difficulties staying focused, difficulty paying attention, distractibility, forgetfulness, boredom with tasks, difficulty completing a task or tasks, difficulty starting a new task, difficulty processing information quickly and difficulty following instructions. Thomas Decl. ¶ 8. Learning disorders and ADHD are recognized psychological disorders, which are expressly identified in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–V). Thomas Decl. ¶ 9. People with learning disorders and/or ADHD can be gifted and succeed professionally in a variety of demanding fields such as law, medicine, biochemistry, education, economics and business. Thomas Decl. ¶ 10. These impairments have individually and collectively caused Ms. Bibber difficulties in the areas of reading, spelling, slow processing speed, working memory, inattention and sustained focus and concentration.

    The difficulties associated with Ms. Bibber's disabilities have significantly impacted her throughout her primary education. As early as kindergarten, Ms. Bibber's parents noticed that she had difficulty learning in school. Most notably, she encountered difficulty learning the alphabet. Consequently, she was retained in kindergarten for a second year. Bibber Decl. ¶ 7.[2] In first grade, Ms. Bibber continued to have struggles with letters and words and reading, including transposing of letters and numbers, writing 5s and 3s backwards and confusing 6s and 9s. She was evaluated by her local public school's Child Study Team and was subsequently determined to have a disability under

---

[2] See also, James Lawrence Thomas, Ph.D.'s evaluation report dated June 3, 2015 (Exhibit 1); Rowan University, Learning Assessment report dated August 23, 2013 (Exhibit 2); Rowan University Psychological Evaluation dated August 22, 2013 (Exhibit 3); Phoebe Liss, Ed.D's evaluation report dated December 31, 2004 (Exhibit 6); and Diana Hanbury King's letter dated November 24, 2003 (Exhibit 8).

the Individuals With Disabilities Education Act, 20 U.S.C. §1400 *et. seq* (IDEA). Bibber Decl. ¶ 8, Exhibit 1. Ms. Bibber was classified as having a Specific Learning Disability[3] in the area of reading and remedial interventions were recommended, which provided specially designed instruction and accommodations in a resource room at her school Bibber Decl. ¶ 8, Exhibit 9 (Lia Haneke, M.A. letter dated July 10, 2015)  From first through sixth grades, pursuant to her IEP, Ms. Bibber received significant support in school including one-on-one instruction to remediate or ameliorate the impact of her reading disorder.  She was also provided several accommodations, which included extended time for tests and quizzes and a reader to read questions on standardized tests. Bibber Decl. ¶ 9, Exhibits 1, 7, 8

During Ms. Bibber's primary education, to further address her learning deficits she also received specialized instruction outside of school.  In fifth grade, she was assessed at the Total Learning Center, which concluded that she had dyslexia. Ms. Bibber received direct instruction in the Wilson Reading Program (WRP). WRP is a research based structured literacy program for students with language based learning disabilities, such as dyslexia, who require multisensory and more intensive instruction. WRP is designed to develop compensatory strategies and remediate reading deficits by developing phonemic awareness, decoding, sight word recognitions, encoding, reading fluency and comprehension.  See http://www.wilsonlanguage.com/programs/wilson-reading-system/.  Ms. Bibber attended the Wilson Program at the Total Learning Center three times a week from fifth through seventh grades. Bibber Decl. ¶ 10, Exhibit 7.

---

[3] See 34 C.F.R. §300.8(c)(10): "Specific learning disability means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in the imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, including conditions such as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia."

Throughout her primary and secondary education, Ms. Bibber received periodic evaluations regarding her impairments. The IDEA mandates for students identified with disabilities that the local education agency (i.e. the student's school district) must conduct an evaluation at least every three years. 20 U.S.C. §1414(a)(2)(B) and 34 C.F.R. §300.303(b)(2). During elementary and middle school, Ms. Bibber's school district conducted an evaluation at least every three years and continued to conclude that she was a person with a disability under the category of Specific Learning Disability. Bibber Decl. ¶ 11.

As Ms. Bibber approached high school, she continued to be identified as a person with disabilities and received accommodations. In eighth grade, in lieu of an IEP, Ms. Bibber was issued a 504 Plan pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (Section 504). The Section 504 Plan provided Ms. Bibber with various classroom and testing accommodations, which included extended time on tests, study guides, copies of notes from teachers and /or other students, and no penalties for spelling errors. Bibber Decl. ¶ 12, Exhibit 1and 10.[4] Throughout high school, Ms. Bibber continued to receive extensive tutoring and direct instruction in reading in order to learn compensatory strategies to ameliorate her reading impairment. Bibber Decl. ¶ 14, Exhibits 1 and 2.  Ms. Bibber's Section 504 Plan with the same accommodations was issued and implemented for each year of high school. Bibber Decl. ¶ 12, Exhibit 10. Accordingly, throughout high school Ms. Bibber continued to be identified as a person with a disability and received extended time for tests and quizzes.

---

[4] Earlier records of Ms. Bibber's IEPs, Child Study Team evaluations and 504 Plans no longer exist as a result of records being destroyed in Hurricane Sandy. See letter from Marcy Kay dated July 7, 2015, Exhibit 11.

In addition to the accommodations that Ms. Bibber received in school, she also received accommodations on several standardized examinations.  During her junior and senior years in high school, Ms. Bibber applied to the College Board to receive 50% extended time on the exam it administers.  College Board approved for Ms. Bibber to receive 50% extended time. Ms. Bibber took eight standardized examinations administered by the College Board with 50% extended time. Bibber Decl. ¶ 15, Exhibit 12.

Ms. Bibber continued to receive academic accommodations during her matriculation to college. In 2003, Ms. Bibber entered Colby College.  Based on the documentation that Ms. Bibber provided from high school, Colby approved for Ms. Bibber to receive several accommodations including extended time (50%) on examinations, notes supplied for classes, extended time to complete written assignments and verbal testing to replace written examinations. Bibber Decl. ¶ 16. In 2004, during Ms. Bibber's sophomore year of college, she received a psychoeducational evaluation, which she submitted to her school. (Exhibit 6) Based on that evaluation, in addition to the accommodations that she was receiving, she was approved for an additional accommodation, which included a foreign language waiver. Bibber Decl. ¶ 17, Exhibit 13. Ms. Bibber graduated from Colby College in the Spring 2007 and in the Fall 2007 she attended Kennebec Valley Community College (KVCC) for some additional coursework. She applied to KVCC for accommodations and was approved to receive 50% extended time on examinations and notes supplied for classes. Bibber Decl. ¶ 18.

Ms. Bibber continued to receive accommodations for her disability during her matriculation through various graduate programs. Ms. Bibber attended graduate school at

Rutgers University Graduate School of Biomedical Sciences (Rutgers) during the 2010-2011 school year.  Rutgers approved Ms. Bibber's request for accommodations including 50% extended time for examinations. Bibber Decl. ¶ 20,Exhibit 14. In the Summer of 2013, Ms. Bibber commenced attending medical school at RowanSOM. She applied for accommodations at the Rowan University Assessment and Learning Center. Rowan University conducted its own assessments and concluded that Ms. Bibber was eligible for accommodations under Section 504.  RowanSOM approved for Ms. Bibber to receive 50% extended time for testing. Bibber Decl. ¶ 21, Exhibit 15. During Ms. Bibber's matriculation at RowanSOM, she has taken numerous objective examinations and has utilized 50% extended time in accordance with her 504 Plan.  In addition, she has also received 50% extended time on the Comprehensive Osteopathic Medical Self-Assessment Examination (COMSAE), which is a three phase computerized examination that is similar to the COMLEX and is also created by the Defendant. RowanSOM administers and proctors the COMSAE to its students and requires that its students pass the COMSAE Phase 1 as a prerequisite to taking the COMLEX 1. Bibber Decl. ¶21, Exhibit 16. Ms. Bibber also received 50% extended time on several Comprehensive Osteopathic Medical Achievement Tests (COMAT), which is a series of discrete subject matter exams in various disciplines of osteopathic medicine that are prepared by Defendant.  Ms. Bibber was administered the Osteopathic Principles and Practice COMAT and the Psychiatry COMAT at RowanSOM  and was approved for and received 50% extended time. Bibber Decl. ¶ 22, Exhibit 16.

## 2.    History of Clinical Evaluations

Ms. Bibber's applications and appeals for accommodations have been supported by the report of highly qualified evaluators who have diagnosed her with a learning disability and/or ADHD. Each clinical evaluator has met with and conducted his/her own evaluation, following accepted methods and procedures in the profession for making a diagnosis and the resulting reports detail the outcomes of their testing and their professional conclusions.

Ms. Bibber has a history of being evaluated and determined to have a disability as early as first grade.  As noted above, Ms. Bibber was evaluated by her public school in first grade and found to have a specific learning disability.  She was evaluated approximately every three years and continue to be identified as a person with a disability throughout primary and secondary school.

Ms. Bibber continued to be evaluated during college and graduate school and was found to have disabilities.  Phoebe Liss, Ed.D. evaluated Ms. Bibber in 2004 during her sophomore year of college to determine whether a waiver from her school's foreign language requirement was an appropriate accommodation. Dr. Liss administered several standardized assessments, which reflected a profile that was statistically and diagnostically significant for dyslexia.  She further observed that Ms. Bibber made a significant amount of errors on tasks that required visual perceptual discrimination of letters and numbers. Dr. Liss also reported that on assessments of word reading and phonetic decoding, Ms. Bibber made errors and miscues on multisyllabic words and that her performance was ranked at several grade levels below her then current grade level. Dr. Liss also reported that Ms. Bibber endorsed several symptoms of ADHD including

distractibility, disorganization, restlessness and impulsivity. Dr. Liss recommended that Ms. Bibber receive a waiver of a foreign language requirement as a result of her history of dyslexia, which would cause problems with learning a foreign language. Dr. Liss further recommended a further evaluation to assess for ADHD. Exhibit 6.

Ann Schoenthaler-Ervin, Ph.D. evaluated Ms. Bibber in November 2005 during Ms. Bibber's junior year for suspected ADHD. Dr. Schoenthaler-Ervin administered several standardized measures of behavior and symptoms. She concluded that Ms. Bibber exhibits attention and impulsivity problems, which fall in a clinical range.  These behaviors were further supported beyond self-report.[5] Dr. Schoenthaler-Ervin also administered the Conners' Continuous Performance Test (CPT), which is a computerized neuropsychological test of attention utilized to support or rule out a diagnosis of ADHD. The results of the CPT indicated strong evidence that Ms. Bibber has attention problems. Based on Dr. Schoenthaler-Ervin's evaluation, she concluded that Ms. Bibber is affected by ADHD and recommended psychopharmacological intervention. Thomas Decl. ¶¶ 12-13, Exhibit 5.

In the Summer 2013, shortly after starting medical school, the Rowan University Assessment and Learning Center conducted an evaluation to determine whether Ms. Bibber requires accommodations in medical school and on standardized tests. Christine Williams, Ed.S, Nationally Certified School psychologist and Maria L. Palmieri, M.A., NJ Certified Learning Consultant respectively conducted a psychological evaluation and learning assessment.  The team concluded that Ms. Bibber demonstrated deficits in reading comprehension and reading fluency. Of note, on a timed standardized assessment

---

[5] Ms. Bibber's mother and a cousin were also administered standardized measures concerning Ms. Bibber's behavior.

of reading comprehension, Ms. Bibber's score fell in the 6th percentile (i.e. 84 percent of individuals performed better). When given extended time; however, Ms. Bibber's score on this reading comprehension assessment increased to the 99th percentile. Thomas Decl. ¶¶ 14, Exhibits 2-4. The evaluator at Rowan University further reported that Ms. Bibber was unable to correctly respond to words, which included double consonants ("suppose," "conferred," "impeccable"), suffixes ("flirtatious") and silent consonants ("gherkin"). The evaluation team at Rowan University concluded that Ms. Bibber was eligible for accommodations under Section 504. The team reported that Ms. Bibber meets the criterion for ADHD and a Reading Disorder. The evaluation team recommended that Ms. Bibber's 504 Plan provide several accommodations including, but not limited to, extended time for testing, written directions for assignments and use of a tape recorder or auditory taping device allowed for class lectures. Exhibits 2-4. The Rowan University's evaluation team's recommendations were implemented as her accommodations plan in medical school.

In June 2015, James Lawrence Thomas, Ph.D. reviewed Ms. Bibber's records and administered several assessments. Dr. Thomas reported that Ms. Bibber has very slow reading comprehension, which limits her reading, studying and test taking; she has a well documented history of dyslexia and ADHD and she has received accommodations of extra time since her earliest years. In particular, Dr. Thomas administered the Nelson-Denny Reading Test and under standard conditions, her score fell in the 5th percentile (i.e. 85 percent of individuals score better). Notably under standard time, she was only able to attempt 23 of 38 questions (answering 20 correctly). Her reading rate was measured in the 1st percentile. Dr. Thomas also reported several deficits from the Woodcock-Johnson

Battery III, which included speeded visual processing (Visual Matching, 9th percentile, Pair Cancellation, 12th percentile) and rapid language processing (Rapid Picture Naming, 23rd percentile). Dr. Thomas further reported that Ms. Bibber made 15 errors on a phonological processing test, which is a classic problem associated with dyslexia. Thomas Decl. ¶16.

Dr. Thomas confirmed Ms. Bibber's diagnosis of Specific Learning Disorder with Impairment in Reading, DSM-V 315.00. Thomas Decl. ¶ 5. He reports that Ms. Bibber has very slow reading comprehension, which limits her functioning in the major life activities of reading and studying.  Her diagnosis is supported by her history and psychometric measure taken over several years. Dr. Thomas reports that because Ms. Bibber reads in a manner and duration that is below average, she needs and qualifies for extended time for the COMLEX. Thomas Decl. ¶¶18-23, 24.

**B.      The Comprehensive Medical Licensing Exam**

The Comprehensive Medical Licensing Exam (COMLEX) is a three step (Level 1, Level 2, Level 3) examination, the successful completion of which is required for medical licensure in the United States. The COMLEX is designed to assess the osteopathic medical knowledge considered essential for osteopathic generalist physicians to practice osteopathic medicine. The COMLEX I examination consists of two, four hour computer based test sessions during one day, containing a total of 400 test questions. The test questions are predominantly in the single best answer, multiple choice or extended matching items formats. Some questions involve audio-visual components. Third year students at RUSOM are expected to attempt the COMLEX I by August 31, the beginning of their third year. Exhibit 17.  Ms. Bibber must pass the COMLEX I in order to maintain

her eligibility to proceed further in medical school. RowanSOM has given Ms. Bibber several extensions of time to take the COMLEX I; however, she must take this exam by January 31, 2016. Exhibit 17.  Furthermore, passing the COMLEX I is required to graduate RowanSOM, to enter into a medical residency program and to take the COMLEX II and COMLEX III examinations. Bibber Decl. ¶¶ 23-24 . Furthermore, the level of performance on the COMLEX I is one of the determining factors for acceptance into the highly competitive residency training programs. Accordingly, a failed attempt or poor performance on the COMLEX I can adversely impact Ms. Bibber's acceptance into a residency training program. Bibber Decl ¶ 24.

### C.    Defendant's Denials of Ms. Bibber's Request for Accommodations

Graduation from medical school, acceptance into a medical residency program and licensure to practice medicine requires, among other things, that Ms. Bibber pass the COMLEX I.  While Ms. Bibber has been preparing extensively for many hours each day over several months, as she has done with other timed standardized examinations, she found that due to her deficits in reading, thinking, concentrating, studying and processing information, she is unable to complete the examination questions under standard conditions. Bibber Decl. ¶ 25. The construct and timing of the COMLEX I creates challenges and exposes her substantial impairments of major life activities to an extreme that she has not experienced with other standardized examinations. Accordingly, in order to demonstrate her true knowledge and achievement level, she has requested extended time on the COMLEX I. Bibber Decl. ¶ 26.

In or about February 2015, Ms. Bibber submitted to the NBOME, an application for accommodations for the COMLEX I. Ms. Bibber requested the accommodation of

50% extended time. Bibber Decl. ¶ 27, Exhibit 18. In addition, Ms. Bibber submitted

evaluation reports and other documentation, which supported her request for

accommodations. The documentation that Ms. Bibber submitted was consistent with and

exceeded the NBOME policies for requesting accommodations as set forth in NBOME's

"Request for Test Accommodation Instructions and Forms" *See* Exhibit 20. In support of

Ms. Bibber's request for accommodations included, (1) COMLEX Level 1 Osteopathic

Medical School Questionnaire, signed on February 4, 2015 by Linda Boyd, D.O.,

RowanSOM Senior Associate Dean, Academic Affairs, certifying that Ms. Bibber

receives 50% extended time on examinations (Exhibit 15); (2) Christine Williams, Ed.S.

Rowan University Assessment and Learning Center, Psychological Evaluation, August

22, 2013 (Exhibit 3); (3) Maria Palmieri, M.A., N.J. Certified Learning Consultant,

Rowan University Assessment and Learning Center, Evaluation, August 23, 2013

(Exhibit 2); (4) Christine Williams, Ed.S. and Maria L. Palmieri, M.S., Rowan University

Assessment and Learning Center, Integrated Team Conclusions, September 3, 2013

(Exhibit 4); (5) Ann Schoenthaler-Ervin, Ph.D. Psychological Evaluation Report,

November 2005 (Exhibit 5); (6) Phoebe Liss, Ed.D., Learning Disability Consultant

Report, December 2004 (Exhibit 6); (7) Ms. Bibber's Addendum to Application for

Accommodations with personal statement (Exhibit 19). Bibber Decl. ¶28. The foregoing

documentation provided current and historical evaluations, which established that Ms.

Bibber has a long and well documented history of learning disabilities that substantially

impact her reading, learning, reading comprehension, reading fluency, thinking and

concentration at the same rate, condition and manner as most people. Moreover, the

foregoing documentation provided proof that Ms. Bibber previously received and

14

currently receives 50% extended time accommodations in school and on several standardized examinations.

NBOME denied Ms. Bibber's request for accommodations in a letter dated April 2, 2015. Bibber Decl. ¶ 29, Exhibit 21. The purported basis for the decision was that the documentation did not demonstrate that Ms. Bibber is substantially limited in a major life activity, when compared to most people in the general population and that the documentation purportedly did not demonstrate how the behaviors have substantially limited Ms. Bibber's functioning relative to her ability to access the COMLEX under standardized time conditions.

On May 6, 2015, Hilary Freeman, Esquire, on behalf of Ms. Bibber, submitted a second request for accommodations and reconsideration of NBOME's prior denial. Exhibit 22. Ms. Bibber submitted additional documentation supporting her request for accommodations. The additional documentation included several letters from RowanSOM's faculty stating that she receive 50% extended time and a separate room as accommodations on several medical school examinations. Exhibit 23. Ms. Bibber also submitted a letter from the College Board reflecting that she received 50% extended time on the SAT, SAT Subject Tests, PSAT and AP examinations. Bibber Decl. ¶ 30, Exhibit 24.

The NBOME rejected Ms. Bibber's second request for accommodations. By letter dated May 26, 2015, from Sydney L. Steele, Esquire, NBOME's counsel, NBOME denied Ms. Bibber request for accommodations.  Mr. Steele's letter asserted that the additional documentation did not alter the conclusion that Ms. Bibber is not a person with disabilities. Bibber Decl. ¶ 31, Exhibit 25.

On or about June 5, 2015, Ms. Bibber submitted her third request for accommodations and appeal of NBOME's denials. Ms. Bibber's appeal furnished the NBOME with additional documentation supporting her request for accommodations. The document included: (1) James Lawrence Thomas, Ph.D. evaluation report, June 3, 2015 (Exhibit 1); (2) Diana Hanbury King, Dyslexia Specialist, letter, November 24, 2003, concerning her assessment of Ms. Bibber (Exhibit 8); (3) Monmouth County Vocational School District, Section 504 Plan, October 1, 2002, providing *inter alia* extended time on tests (Exhibit 10);(4) Mark R. Serdjenian, Colby College, Associate Dean, February 11, 2005 letter, noting approval of foreign language waiver. (Exhibit 13); (5) Marge Weiner, M.S.,  Academic Language Therapist, January 28, 2015 letter summarizing her assessments and reading therapies from fifth to seventh grades. (Exhibit 7).

For the third time, NBOME issued its blatantly discriminatory denial of Ms. Bibber's request for accommodations in a letter dated June 29, 2015. The NBOME maintained its assertion that the documentation does not provide sufficient evidence of a learning disability in reading. Exhibit 26.

Ms. Bibber through the undersigned counsel has notified NBOME of its violation of the ADA and requested that it remedy this matter by providing the requested accommodations. Counsel furnished the NBOME with additional documentation supporting Ms. Bibber's entitlement to accommodations.  The additional documentation included: Linda Boyd, DO, Associate Dean, RowanSOM, letter dated August 24, 2015, stating approval of 50% extended time on examinations including the COMAT and COMSAE (Exhibit 16); Lia Haneke, MA, Elementary School Special Education Teacher,

letter dated July 10, 2015 (Exhibit 9); Nadine Stevens, Program Administrator, Graduate School of Biomedical Sciences, Rutgers University, letter dated September 10, 2015, confirming accommodations of 50% extended time (Exhibit 14). NBOME has refused to approve Ms. Bibber's request for accommodations. NBOME is the only education or testing entity to have denied Ms. Bibber's request for accommodations.

NBOME has reached conclusions which it has no position to support, and has essentially ignored the lengthy history of remediation and accommodations and the opinions of prior evaluators and educators. It is undisputed that NBOME's staff and its consultants who make the accommodations determinations have never spoken to or met Ms. Bibber. It is unclear what qualifications, if any, they have in the assessment of learning disabilities and accommodations. NBOME's actions demonstrate that they have ignored Ms. Bibber's evaluator's finding, misconstrued facts and misinterpreted the law. The documentation that Ms. Bibber has furnished to the NBOME overwhelmingly supports her need and entitlement to appropriate accommodations on the COMLEX I.

## III.    QUESTION PRESENTED

1)    Whether Plaintiff has demonstrated a reasonable likelihood that she is a person with a disability under the Americans with Disabilities Act and entitled to accommodations, which include 50% extended time and a distraction reduced testing environment on the COMLEX I.

2)    Whether this Court should grant Plaintiff's request for preliminary injunctive relief for the requested accommodations.

## IV.    ARGUMENT

### A.    <u>Plaintiff Meets the Standards for Preliminary Injunction</u>

The ADA expressly authorizes injunctive relief as appropriate to remedy acts of

discrimination against people with disabilities. *See* 42 U.S.C. § 12188(a)(1).[6] In deciding whether to issue a preliminary injunction, a court must consider (1) the likelihood that plaintiff will succeed on the merits (2) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (3) that granting preliminary relief will not result in even greater harm to the defendant, and (4) the public interest favors such relief. *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). No one element is determinative of the outcome and the Court must engage in a balance of all the elements. *Constructors Association of Western Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir.1978). As will be discussed below, Plaintiff satisfies all four factors.

### B.    Plaintiff Has A Reasonable Likelihood Of Success On The Merit

#### 1.    Legal Standard

In order to meet its burden on a preliminary injunction, Ms. Bibber need only demonstrate that there is a reasonable probability that she will succeed on the merits. See *Institute for Motivational Living v. Sylvan Learning Center,* 2008 U.S. Dist. Lexis 9631 (W.D. Pa. February 7, 2008). (quoting *Oburn v. Shapp*, 521 F.2d 142, 148 (3d Cir. 1975) ("It is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather, the burden is on the party seeking [injunctive] relief to make a [p]rima facie case showing a reasonable probability that it will prevail on the merits."); and *Beilowitz v. General Motors Corp.,* 233 F.Supp.2d 631,639 (D.N.J. 2002) (stating "plaintiff need only make a showing of  reasonable probability, not certainty, of success on the merits.")

---

[6] Specifically, the ADA provides, "[t]he remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of section 12183 of this title."  42 U.S.C. § 12188(a)(1).

Title III of the ADA requires private entities, like the NBOME that administer standardized examinations such as the COMLEX I, do so in a "place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. §12189.   The purpose of the ADA is to guarantee that those with disabilities are not disadvantaged and "to place those with disabilities on equal footing" with others.  *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673 (N.D. Texas 2003); *Agranoff v. Law School Admission Council*, 97 F.Supp.2d. 86 (D. Mass 1999). The regulations implemented in accordance with the ADA provide that an examination is administered to best ensure that, "the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's [disability]" 28 C.F.R. §36.309(b)(1)(i). (emphasis added). *See Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 115 (9th Cir. 2011); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164 (D.D.C. 2011); *Jones v. National Conference of Bar Examiners,* 801 F.Supp.2d 270 (D. Vt. 2011). One possible modification to an examination, such as the COMLEX I, is to "change the length of time permitted for completion of the examination."  29 C.F.R. § 36.309(b)(2).  Title III of the ADA also prohibits discrimination by testing entities, such as the NBOME, on the basis of disability.  Such an entity engages in an impermissible act of discrimination when it fails to provide "reasonable accommodations to known physical or mental limitations" in connection with testing.  42 U.S.C. § 12112(b)(5)(A).

To succeed on an ADA claim within the context of testing accommodations, the Plaintiff must show "(1) that she is disabled, (2) that her requests for accommodations are

reasonable, and (3) that those requests have been denied.". *D'Amico v. New York State Bd. Of Law Examiners*, 813 F. Supp. 217, 221 (W.D.N.Y. 1993).[7] There is no dispute that Plaintiff's request for 50% extended time is reasonable. As noted above, the regulations implemented under Title III of the ADA expressly provide that accommodating an individual with a disability may require a testing entity to change the length of the time for an exam. 28 C.F.R. §36.309(b)(2). Moreover, on information and belief, the NBOME in the past has provided 50% extended time to individuals with learning disabilities and/or ADHD. Furthermore, there is no dispute that Ms. Bibber's requests for accommodations have been denied. See Exhibits 21, 25, 26. Accordingly, the sole dispute is whether Ms. Bibber is a person with disabilities under the ADA.

### 2.    Ms. Bibber Is A Person With Disabilities Under the ADA

An individual is disabled within the meaning of the ADA if that individual is affected by "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2)(A). Ms. Bibber is substantially impaired in the major life activities of reading, spelling, cognitive processing speed, working memory, thinking attention and concentration. The regulations promulgated under Title III of the ADA define a "physical or mental impairment" as "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and **specific learning disabilities**. 28 C.F.R. §36.104. (Emphasis added) The ADA Amendments Act further clarifies that major life activities include "…learning, reading, concentrating, thinking, communicating and

---

[7] *See also Guckenberger v. Boston University,* 94 F.Supp. 106, 152 (D. Mass. 1997); *Hartman v. Nat'l Bd. Of Med. Examiner,* 2010 U.S. Dist. LEXIS 27691 *6, (E.D. PA Mar. 9, 2010) (preliminary injunction order vacated as moot pursuant to a settlement), 2010 U.S. Dist. LEXIS 116517 (E.D. PA Oct. 14, 2010); and *Agranoff v. Law School Admission Council*, 97 F.Supp.2d. 86, 87 (D. Mass 1999) (using three factors of *D'Amico)*;

working." 42 U.S.C. §12102(2)(A). Further, the Third Circuit has held that reading, thinking and cognitive functioning are all major life activities. *See, e.g., Gagliardo v. Connaught Laboratories, Inc.,* 311 F.3d 565, 569 (3d. Cir. 2002) (interpreting thinking, concentrating, remembering and more generally cognitive functioning are major life activities); *Eshelman v. Agere Systems, Inc.,* 397 F.Supp.2d 557, 571 (E.D. Pa. 2005) (interpreting thinking, remembering, and cognitive functioning as major life activities) Ms. Bibber furnished the NBOME with extensive documentation reflecting a lengthy history or evaluations reflecting that she is a person with disabilities, that she received specially designed instruction and accommodations throughout her schooling. She also furnished documentation showing current impairments and accommodations in school and on standardized exams including standardized medical exams.

In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the broad scope of the ADA as Congress originally intended. 42 U.S.C. §12101(b)(6). The promulgated EEOC regulations provide in pertinent part: "[t]he primary purpose of the ADA [Amendments Act] was to make it easier for people with disabilities to obtain protection under the ADA. 29 C.F.R. §1630.1(b)(4)  Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 29 C.F.R. §1630.1(b)(4). *See also, Jenkins v. National Board of Medical Examiners*, 2009 U.S. App. LEXIS 2660(6th Cir. February 11, 2009). The amended regulations under the ADA go on further to note:

> The primary object of attention in cases brought under the
> ADA should be whether covered entities have complied

> with their obligations and whether discrimination has
> occurred, not whether the individual meets the definition of
> disability. The question of whether an individual meets the
> definition of disability under this part should not demand
> extensive analysis.

29 C.F.R. §1630.1(b)(4).

Accordingly, in enacting the 2008 amendments to the ADA, Congress and the regulatory

authority has made it evident to broadly construe the determination of disability and to

reject narrow interpretations of disability. See also, 29 C.F.R.§1630.2(j)(1)(i) and (iii).

The term "substantially limits" is to be construed broadly in favor of expansive

coverage. 29 C.F.R. §1630.2(j)(1). The ADA regulations provide that in determining

whether an individual is substantially limited, it may be useful to consider, as compared

to most people in the general population, the condition, manner and duration in which the

person performs the major life activity. 29 C.F.R. §1630.2(j)(4)(i). In assessing the

condition, manner and duration under which a major life activity can be performed may

require consideration of the difficulty, effort, or time required to perform a major life

activity or the pain or discomfort experienced when performing the major life activity.

Examining condition, manner, and duration may also require the amount of time or effort

an individual has to expend when performing a major life activity because the effects of

an impairment even if the individual is able to achieve the same or similar result as

someone without the impairment. See 29 C.F.R. §1630.2 (j)(4)(i) - (iii).

Ms. Bibber's documentation in support of her request for accommodations

plainly demonstrates that the condition, manner and duration under which she reads,

thinks, processes information, concentrates, etc. is substantially limited when compared

to most people. Specifically, the nature and severity of Ms. Bibber's learning disability

22

and ADHD are such that she does not process visual information, read and concentrate in the manner and speed that most individuals do, thus substantially limiting her ability to read, learn, think, process information, concentrate, study and take exams in her chosen career. See 29 C.F.R. §1630.2 (j)(4)(i) - (iii); See also Bibber Decl. at ¶¶ 3- 6; and Thomas Decl. at ¶¶ 22-23   .  For example, it takes Ms. Bibber three to four times longer than most students to read material.  Questions that are passage or vignette based are difficult to complete within the required time due to her slow reading speed, impaired fluency and lack of automaticity. Due to her impairments, Ms. Bibber is not able to complete an exam unless given extended time. Bibber Decl. ¶ 5. Moreover, her neuropsychological evaluation demonstrated profound deficits in reading, reading fluency, visual processing and attention. Deficits were noted on standardized measures of speeded visual processing, rapid language processing and auditory attention. Thomas Decl. ¶¶ 16-17, 21. In her most recent evaluation conducted by James Lawrence Thomas, Ph.D. it was concluded based on his testing as well as prior evaluations that Ms. Bibber has learning function below average compared to her peers and therefore has a Specific Learning Disorder with Impairment in Reading (315.00) under both the Diagnostic and Statistical Manual of the American Psychiatric Association-5[th] Edition (DSM-V) and the ADA. Thomas Decl. ¶5 Dr. Thomas notes that on the Nelson Denny Reading Test, she was not able to complete the reading comprehension assessment in the standard time (20 minutes); rather, she answered only 23 of 38 questions with 20 answered correctly.[8] Her

---

[8] The Nelson Denny Reading Test is a timed reading comprehension test, which consists of seven reading passages and a total of thirty-eight questions, each with five answer choices. The standard time limit is twenty minutes. If the student does not complete the assessment within twenty-minutes the student is then given the extended time format which provides for up to twelve extra minutes. Thomas Decl. ¶ 16 fn. 1.

timed reading comprehension score fell in the 5[9] percentile.[9] This result was similar to the results in a 2013 evaluation where she scored in the 6th percentile. When give extended time (9 minutes 18 seconds) she completed all 38 questions with 33 answered correctly. Furthermore, on measures of phonological processing (Speech-Sound Perception Test and Rhythm test of the Halstead-Reitan Battery) her score fell in the impaired range (1st and 2nd percentile, respectively). Such results are consistent with a profile of dyslexia. These results reflected an impairment in reading fluency. Additionally, on the Woodcock-Johnson Battery-III on the Cognitive Efficiency subtest her score fell in the 16th percentile; on the Visual Matching subtest her score fell in the 9th percentile; on the Pair Cancellation subtest her score fell in the 12th percentile; on the Rapid Picture Naming (rapid language processing) her score fell in the 23rd percentile. Ms. Bibber scores, which were below average on these measures, demonstrated impaired visual processing. Thomas Decl. ¶¶ 16-17. Dr. Thomas concludes that Ms. Bibber reads in a manner and duration that is below average and he therefore recommends extended time (50%) on the COMLEX. Thomas Decl. ¶ 22-23, 28; Exhibit 1.

The opinions and recommendations of Ms. Bibber's various evaluators as to her disability and need for accommodations carry presumptive weight and must be accepted by the NBOME. The regulatory guidance issued by the Department of Justice construing Title III of the ADA and directed to testing entities such as the NBOME further supports that Ms. Bibber is a person with disabilities and entitled to accommodations. The Department of Justice advises that testing entities should accept without further inquiry, "documentation provided by a qualified professional who has

---

[9] A rank in the 5th percentile reflects that 95 percent of Ms. Bibber's peers performed better than her on the Reading Comprehension section.

made an individualized assessment of an applicant that supports the need for the

modifications, accommodation, or aid requested." See 28 C.F.R. pt. 36, app. A, at 795.

The guidance further explains that, "[r]eports from experts who have personal familiarity

with the candidates should take precedence over those from, for example, reviewers for

testing agencies, who have never personally met the candidate or conducted the requisite

assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796. *See also,*

*D'Amico v. New York State Board of Law Examiners*, 813 F.Supp. 217, 223 (N.D.N.Y.

1993) (it is appropriate to give "great weight to the physician's opinions as to the nature

of the accommodations required for his patient"). The Department of Justice's (DOJ)

Technical Assistance on Test Accommodations (annexed as Exhibit 27), which provides

that "a testing entity should generally accept such documentation and provide the

recommended accommodation without further inquiry", further supports this

interpretation.   Ms. Bibber has provided documentation to the NBOME from Dr.

Thomas (Exhibit 1) and Rowan University Assessment and Learning Center (Exhibits 2-

4), both of which concluded that Ms. Bibber is a person with disabilities and

recommended extended time for exams. Furthermore, earlier evaluations similarly

concluded that Ms. Bibber was a person with disabilities and entitled to accommodations.

Accordingly, given the weight accorded to Ms. Bibber's evaluators and the lack of

evidence that contravenes their opinions, Ms. Bibber is entitled to receive

accommodations.

        Furthermore, Ms. Bibber's lengthy academic history of accommodations

further substantiates her entitlement to accommodations on the COMLEX. As noted

above, from first through sixth grades, Ms. Bibber received significant support and

accommodations in school for her learning disabilities, including extended time on tests pursuant to an educational plan. Bibber Decl. ¶¶ 8-10.  As she progressed into middle school and high school, she continued to receive accommodations including extended time on tests. Bibber Decl. 12 and Exhibit 10.[10] On the College Board examinations (i.e. SAT) Ms. Bibber was approved to receive 50% extended time.  Ms. Bibber attended Colby College from 2003 to 2007 and was also approved to receive accommodations, which included 50% extended time on tests and quizzes. In 2007, Ms. Bibber enrolled in several classes at Kennebec Valley Community College and received accommodations including 50% extended time on examinations. From 2010-2011, Ms. Bibber matriculated to Rutgers University Graduate School of Biomedical Sciences to pursue a Masters in Biomedical Science.  Rutgers approved and provided Ms. Bibber with accommodations for her disability, which included 50% extended time for examinations. Bibber Decl. ¶¶ 16, 18, 20.,Exhibit 14. In 2013, RowanSOM issued Ms. Bibber a 504 Plan that provided several accommodations including 50% extended time. Bibber Decl. ¶¶ 21-22 Exhibit 15. Ms. Bibber received 50% extended time on numerous exams and quizzes including the COMSAE and COMAT exams, which are created by Defendant and cover the same subject matters as the COMLEX.

  The regulatory guidance instructs that prior use of accommodations shall be accorded considerable weight when making a determination about accommodations.  The ADA regulations provide in pertinent part:

> When considering requests for modifications,
> accommodations, or auxiliary aids or services, the entity gives
> considerable weight to documentation of past modifications,

---

[10] Exhibit 10 is a Section 504 Plan issued in October 2002 when Ms. Bibber was in twelfth grade.  Earlier IEPs and 504 Plans are no longer available as the school district's records were destroyed in a flood. Bibber Dec.  , and Exhibit 11.

> accommodations, or auxiliary aids or services received in similar testing situation, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as a Section 504 Plan).  28 C.F.R. §36.309(b)(1)(v).

Furthermore, The Department of Justice's Technical Assistance on Test Accommodations (Exhibit 27) provides:

> If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.
>
> \* \* \*
>
> If a candidate shows the receipt of testing accommodations in his or her most recent IEP or Section 504 Plan, and certifies his or her current need for testing accommodations due to disability, then a testing entity should generally grant those same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate.

Ms. Bibber has provided both current and past documentation of accommodations at various schools pursuant to Section 504 Plans and IEPs. She has also received accommodations on similar testing situations (i.e. high stakes tests) including the SAT, medical school exams, the COMSAE and COMAT. The latter two exams are nearly identical to the COMLEX. Except for Defendant, Ms. Bibber has never been denied accommodations by any school or testing entity. The regulatory authority and DOJ's interpretation necessitates approving Ms. Bibber's request for accommodations.

NBOME's primary reason for its denial is that Ms. Bibber took the MCAT and GRE under standard conditions and scored in the 40th and 71st percentile (Exhibits 21, 25 26) [11]. Defendant's basis for denial ignores the express provisions of the ADA and DOJ's guidance. The proper inquiry is not about outcomes (i.e. good grades or test scores), but rather how the outcomes are achieved. The ADA provides:

> In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, **the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve.** For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

29 C.F.R. §1630.2(j)(4)(iii) (emphasis added). [12] Furthermore, Courts have held that comparing outcomes is not useful in determining whether one is substantially limited in the major life activity at issue.  In *Bartlett v. New York St. Bd. Of Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926 (S.D.N.Y. Aug. 15, 2001) the court notes:

> A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent the court from making a finding of disability in the case of any individual like [Plaintiff] who is extremely

---

[11] In Defendant's April 2, 2015 denial (Exhibit 21), it states as a basis for denial, "…your performance on the Nelson Denny Reading Test (NDRT), where reading comprehension is measured within the context of a timed, multiple choice examination, was within normal limits."  The statement is factually inaccurate. On the 2013 evaluation (Exhibit 2) Ms. Bibber's score on the standard administration fell in the 6th percentile, which is well below average. Moreover, on the 2015 administration of the NDRT (Exhibit 1) she score in the 5th percentile on reading comprehension section under standard time administration. Her evaluator, Dr. Thomas noted that she was only able to complete 23 of 38 items in standard time administration.

[12] *See* Appendix to Part 1630-Interpretive Guidance on Title I, 29 CFR Part 1630) In passing the 2008 amendments to the ADA Congress emphasized, "[w]hen considering the condition, manner and duration in which an individual with a specific learning disability performs a major life activity, it is critical to reject the assumption that an individual who has performed well academically cannot be substantially limited in activities such as learning, reading, writing, thinking or speaking." 76 Fed. Reg. 16,978 at 17,012-17,013.

> bright and hardworking, and who uses alternative routes to
> achieve academic success.

*Bartlett,* 2001 U.S. Dist. LEXIS 11926 at *122. On the MCAT and GRE, Ms. Bibber was

unable to complete either examination. Bibber Decl. ¶ 19.  She takes longer than most

individual to read and consequently complete exams.  Moreover, because she was not able

to complete the exams, her scores reflect her disability. Accordingly, failing to provide Ms.

Bibber extended time contravenes the express provision of the ADA, which provides that an

examination is administered, "…so as to best ensure that, when the examination is

administered to an individual with a disability that impairs sensory, manual, or speaking

skills, the examination results accurately reflect the individual's aptitude or achievement

level or whatever other factor the examination purports to measure, rather than reflecting the

individual's impaired sensory, manual or speaking skills…." 28 C.F.R. §36.309(b)(1)(i).

Inasmuch as Ms. Bibber's impairments prevent her from completing the exam within the

standard administration, she needs extended time in order to complete the exam and

demonstrate her accurate achievement and knowledge.

  NBOME's scrutiny in this matter represents the type of conduct that Congress

targeted and sought to end in the passing of the 2008 amendments to the ADA. The

statutory history reflects:

> Historically, certain individuals with learning disabilities
> seeking accommodations in higher education – including
> high stakes exams-have seen their access to testing
> accommodations severely undercut by testing companies
> not willing to consider and support that learning disabilities
> are neurologically based, lifelong disabilities that may exist
> in students with high academic achievement because the
> individual has been able to cope and mitigate the negative
> impact while simultaneously being substantially limited in
> one or more life activities.  2 Cong.Rec. 8296 (Sept. 17,
> 2008).

NBOME's denial fails to follow both the ADA regulations and the DOJ Technical Guidance and instead overreaches and looks for reasons to deny accommodations. Contrary to the ADA and DOJ Technical Guidance, the NBOME fails to give the presumptive weight to Ms. Bibber's evaluators who actually evaluated her; they fail to give presumptive weight to her receipt of accommodations (i.e. 50% extended time) pursuant to an IEP or 504 plan since first grade and continuing through high school, college, graduate school and medical school; and they fail to give presumptive weight to her receiving accommodation on other standardized and high stakes tests such as the SAT, medical school exams, COMAT and COMSAE. *See, Sinapi v. Rhode Island Board of Bar Examiners, et. al.,* U.S.D.C. R.I., DKT. 15-cv-00311 (July 27, 2015) (attached as Exhibit 28) Furthermore, The Best Practices Panel's Report[13], which is referenced in the DOJ's Technical Guidance on this point submits:

> The Panel recognizes that prior testing accommodations, such as extra time on university examinations, may have been in a somewhat different context or even for a somewhat different purpose. Nonetheless, the Panel concludes that an established history of testing accommodations shall presumptively support the request for the provision of similar testing accommodations on the LSAT. It shall be the role of the LSAC reviewer(s) to look for evidence that supports the candidate's request for testing accommodations, rather than to look for evidence that denies the candidate's request.

---

[13] In *Dept. of Fair Employment & Housing v. Law School Admission Council, Inc.,* 2015 U.S. Dist. LEXIS 104751 (N.D. CA. August 7, 2015) an expert panel convened in connection with a consent decree to make recommendations as to proper accommodations review handling. A copy of the consent decree can be found at http://www.ada.gov/lsac_best_practices_report.docx (last viewed December 14, 2015).

See Best Practice Panel Report at p. 11 of 30. *Accord, Dept. of Fair Employment & Housing v. Law School Admission Council, Inc.,* 2015 U.S. Dist. LEXIS 104751 *30-45 (N.D. CA. August 7, 2015).

In accordance with the ADA and based on the recommendations of Ms. Bibber's evaluators; her prior history of receiving accommodations in school; and her history of receiving accommodations on standardized exams and high stakes tests, this Court should recognize that Ms. Bibber is a person with a disability and entitled to the accommodation of 50% extended time. Inasmuch as Ms. Bibber's requested accommodation is appropriate, a denial by the NBOME constitutes a violation of the ADA.

### C.    Plaintiff Will Suffer Irreparable Harm If The Injunction Is Not Granted

Ms. Bibber will suffer irreparable harm in the absence of an order granting a preliminary injunction. The Third Circuit has held that a party seeking injunctive relief must always demonstrate irreparable harm, stating that a "district court may issue a permanent injunction only after a showing both of irreparable injury and inadequacy of legal remedies." *Natural Res. Def. Council v. Texaco Ref. and Mktg., Inc.,* 906 F.2d 934, 941 (3d. Cir. 1990) Irreparable harm is characterized as a "clear showing of immediate irreparable injury" or a "presently existing actual threat," which cannot be redressed adequately by monetary damages. *Continental Group, Inc., v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir. 1980); Adams v. Freedom Forge Cor*p.*, 204 F.3d 475, 484-85 (3d Cir.2000) (stating "irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages"). Irreparable harm occurs when a disabled person is barred from participating in a normal life activity by virtue of ongoing

discrimination related to her disability. *See D'Amico,* 813 F. Supp. at 220 (finding

irreparable harm for failure to make accommodations on bar exam); *See also*, *Agranoff v.*

*Law Sch. Admission Council, Inc.,* 97 F. Supp. 2d 86 (D. Mass 1999) (granted preliminary

injunction finding irreparable harm for failure to make accommodations on the Law

School Admission Test).   Accordingly, Ms. Bibber will be irreparably harmed unless this

Court issues a preliminary injunction.

       The COMLEX I is not merely an exam, it is the gatekeeper to completing medical

school, qualifying for a residency program and ultimately seeking medical licensure.  If Ms.

Bibber does not take the COMLEX I by the end of January 2016 with accommodations, the

COMLEX will effectively become the ultimate barrier to the medical profession because the

resulting score will not "best ensure" that the exam results will reflect her true ability or

achievement level.  Rather, her score will reflect the substantial impact of her disability. *See*

28 C.F.R. §36.309(b)(1)(i). *See Jones v. National Conference of Bar Examiners,* 801

F.Supp.2d 270, 286-288 (D. Vt. 2011). Furthermore, if she is not able to complete the

COMLEX I due to the lack of appropriate accommodations, she will be unable to complete

her medical school education, graduate and receive consideration for a residency position.

Additionally, if she does not receive appropriate and reasonable accommodations, she will

be placed at a disadvantage of competing for quality residency positions.  Her medical

career could end if she is not given a fair opportunity to pass the COMLEX I through the

implementation of the requested appropriate accommodations. Bibber Decl. ¶¶ 35-38.

NBOME's refusal to provide appropriate accommodations places Ms. Bibber at a

disadvantage and may end her medical education and career in which she has invested

considerable time and money. *See, Sinapi v. Rhode Island Board of Bar Examiners, et. al.,*

U.S.D.C. R.I., DKT. 15-cv-00311 (July 27, 2015)(finding irreparable harm by not giving plaintiff equal opportunity to take and pass the bar exam.) This immediate and actual harm cannot be repaired absent preliminary injunctive relief.  Moreover, as noted above, no other remedy at law is available in that the only relief available under the ADA is injunctive relief.[14] Courts have granted preliminary injunctive relief against testing agencies under similar circumstances. See e.g., *Jones v. National Conference of Bar Examiners,* 801 F.Supp.2d 270, 286-288 (finding irreparable harm if Plaintiff is required to take a "high stakes" exam in discriminatory circumstances);  *Enyart v. Nat'l Conf. of Bar Exam., Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) (finding irreparable harm in the form of loss of pursuing chosen profession); *Bonnette v. District of Columbia Court of Appeals*, 796 F.Supp.2d 164, 186-187 (D.D.C. 2011) (irreparable harm found for delay in practicing profession); *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86 (Mass. 1999); *Rush v. National BD. Of Medical Examiners,* 268 F. Supp.2d 673 (N.D. Tx. 2003). Furthermore, if Plaintiff is not permitted to take the COMLEX I with appropriate accommodations by the end of January, she will be irreparably harmed because she will lose the extensive time she has invested in preparation for the COMLEX. See, *Agranoff*, 97 F.Supp.2d at 88 (found irreparable harm because of loss of time and effort spent in preparatory course and with tutor for the LSAT).  Plaintiff has been preparing for the COMLEX since February 2015. Bibber Decl. ¶ 35. Accordingly, injunctive relief under such circumstances is not extraordinary.

---

[14] Section 12188(a)(1) provides, "the remedies and procedures set forth in section 2000a-3(a) are the remedies and procedures of this subchapter.."  42 U.S.C. 2000a-3(a) provides: "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved."   See also, *Barbosa v. Amer. Osteopathic Bd. Of Surgery*, 2008 U.S.Dist. LEXIS 51457 (S.D. OH May 23, 2008) [dismissing claims for monetary damages]; *Powell v. Nat'l Bd. Of Med. Examiners* 364 F.3d 79, 86 (2d Cir. 2004) (holding that "a private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages.")

### D.     The Equities Weigh In Favor of Granting The Preliminary Injunction

The NBOME's denial of Ms. Bibber's accommodation request denies her the opportunity to take the COMLEX I on equal footing with non-disabled test-takers, in violation of federal law, and constitutes an irreparable injury, which would be mitigated by the issuance of a preliminary injunction.  By contrast, the harm that an injunction would cause the NBOME is negligible.

Further, the issuance of an injunction providing Ms. Bibber with her requested accommodation will not affect other COMLEX test takers. The nature of the appropriate accommodation requested by Ms. Bibber merely places her on equal footing with non-disabled test takers, and does not provide her with an unfair advantage on the COMLEX. *D'Amico,* 813 F.Supp. at 221 (purpose of the ADA "is to place those with disabilities on an equal footing and not to give them an unfair advantage"). Furthermore, it has been held that the threatened injury to the student outweighs any damage that granting the preliminary injunction might cause to the NBME or other licensing entities or to the public. See e.g., *Rush v. National Board of Medical Examiners*, 268 F.Supp. 2d 673, 679 (N.D. Texas 2003).

Additionally, providing the Plaintiff with 50% extended time will neither jeopardize the integrity of the COMLEX, nor the examination process.  Defendant NBOME has historically provided certain test takers with learning disabilities and/or ADHD extra time on the COMLEX. Accordingly, there likely will be no additional costs and administration in granting such accommodation.

### E.     Granting an Injunction Will Advance the Public Interest

The ADA was enacted to serve the strong public interest to "elimin[ate] discrimination against people with disabilities." 42 U.S.C. §12101(b)(1).  In the context of

34

preliminary injunctions, courts have found that "[t]he public interest is clearly served by eliminating the discrimination Congress sought to prevent in passing the ADA." *Jones v. City of Monroe, MI,* 341 F.3d 474, 490 (6th Cir. 2003); see also, *Agranoff v. Law School Admission Council, Inc.*, 97 F. Supp. 2d 86, 88 (Mass. 1999)("court has an obvious public interest in providing those with disabilities equal footing"). Furthermore, the policy considerations embodied in the ADA are made explicit in the findings and purpose of the Act. Specifically, the Act provides, "individuals with disabilities continually encounter various forms of discrimination" which includes "the failure to make modifications to existing facilities and practices" and "exclusionary qualification standards and criteria." 42 U.S.C. §12101(a)(5). Furthermore, the longer Ms. Bibber is barred from entering the medical profession, the longer society is prevented from benefitting from the work of a promising medical student. *See, Hartman v. Nat'l Bd. Of Med. Examiner,* 2010 U.S. Dist. LEXIS 27691 *6, (E.D. PA Mar. 9, 2010) (preliminary injunction order vacated as moot pursuant to a settlement), 2010 U.S. Dist. LEXIS 116517 (E.D. PA Oct. 14, 2010).

Accordingly, granting the injunctive relief requested by Plaintiff is consistent with the anti-discrimination mandate of the ADA and therefore serves the public interest.

**V.      CONCLUSION**

For the foregoing reasons, Ms. Bibber respectfully requests that the Court grant her Motion for Preliminary Injunction, which compels defendant, NBOME to provide accommodations of 50% extended time on the COMLEX I and that the exam be administered with said accommodations by the end of January 2016.

Respectfully submitted

Dated: January 8, 2016

_____
Charles Weiner, Esquire
PA Attorney I.D. # 52926
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel:  (267) 685-6311
Fax:  (215) 604-1507
charles@charlesweinerlaw.com

Counsel for Plaintiff, Bernadette M. Bibber