UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNADETTE M. BIBBER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-4987 |
| NATIONAL BOARD OF OSTEOPATHIC MEDICAL EXAMINER, INC. | ) |
| Defendant. | ) |

**DECLARATION OF BERNADETTE M. BIBBER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, Bernadette M. Bibber, submit this declaration based upon my personal knowledge. If called upon to testify, I can and will testify truthfully and accurately to the facts contained herein.

1. I am a 31-year-old resident of New Jersey. I am currently in my third year of medical school attending the Rowan University School of Osteopathic Medicine (RowanSOM) with graduation expected in May 2017.

2. I am a person with a disability. My disability is neurodevelopmental in nature and presents various symptoms consistent with a learning disability including dyslexia, visual perceptual impairments and attention deficit hyperactivity disorder (ADHD).

3. Due to these conditions, I experience substantial difficulties with reading, spelling and often transpose or invert letters and numbers when reading. Furthermore, the manner in which I process information is very slow. Moreover, I am inattentive, easily

distracted and have difficulty initiating assignments and tasks, which further impacts reading, studying and other school and work related functions.

4. The nature and severity of my learning disability and ADHD are such that I do not process visual information, read and concentrate in the manner and speed that most individuals do, thus substantially limiting my ability to read, learn, think, process information, concentrate, study and take medical exams under standard time administration.

5. It takes me three to four times longer than most students to read material. Questions that are passage or vignette based are difficult to complete within the required time due to my slow reading speed, impaired fluency and lack of automaticity. Due to my impairments, I am not able to complete exams unless given extended time. When I am given extended time on exams, I have more time to read and decode passages, which in turn enables me to fully comprehend the passage and apply my knowledge.

6. Because of the slow pace at which I read and process information, I encounter substantial difficulties in tasks, which are not conducted under timed constraints. For example, reading all the material to prepare for classes through out my education including my medical education has been a challenge and typically requires many extended hours of time, often sacrificing sleep, to complete assignments or gain an understanding of the material.

**Prior Academic History**

7. As early as kindergarten, I had difficulty learning in school. Most notably I encountered difficulty learning the alphabet despite being exposed to the alphabet

during three previous years of pre-school. Consequently, I was retained in kindergarten for a second year.

8. In first through eighth grades I attended a private parochial school. In first grade, I continued to have struggles with letters and words and reading, including transposing of letters and numbers, writing 5s and 3s backwards and confusing 6s and 9s. I was evaluated by my local public school's Child Study Team and was subsequently determined to have a disability under the Individuals With Disabilities Education Act, 20 U.S.C. §1400 *et. seq.* (IDEA). I was classified as having a Specific Learning Disability in the area of reading and remedial interventions where recommended, which provided specially designed instruction and accommodations in a resource room at my school. (See Exhibit 9)

9. Throughout elementary and middle school, I continued to receive significant support in school through a resource room, including one-on-one instruction to remediation or ameliorate the impact of my reading disorder. I was also provided several accommodations, which included extended time for tests and quizzes and a reader to read questions on standardized tests.

10. In fifth grade, I was assessed at the Total Learning Center, which concluded that I had Dyslexia, which is a type of learning disorder that impacted my ability to read. I received direct instruction in the Wilson Reading Program (WRP), which is an Orton Gillingham certified, research based remedial reading program with multisensory language instruction. I attended the WRP at the Total Learning Center three times a week from fifth through seventh grades and completed all 12 levels. (See Exhibit 7).

11. During elementary and middle school, in accordance with the requirements of the IDEA, my school district conducted an evaluation at least every three years and continued to conclude that I was a person with a disability under the category of Specific Learning Disability.

12. In eighth grade, in lieu of an IEP, I was issued a 504 Plan pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (Section 504). The Section 504 Service Plan provide me with various classroom and testing accommodations, which included extended time on tests, study guides, copies of notes from teachers and /or other students, and no penalties for spelling errors. These accommodations remained in place during the entire time I attended high school. (See Exhibit 10)

13. I only maintained a copy of my 504 Plan from twelfth grade (2002-2003 school year). (Exhibit 10) I attempted to obtain other records from my primary and secondary education but was advised that all records were destroyed in Hurricane Sandy. (See Exhibit 11)

14. Throughout high school, I continued to receive extensive tutoring and direct instruction in reading in order to learn compensatory strategies to ameliorate my reading impairment.

15. During my junior and senior years in high school, I applied to the College Board to receive 50% extended time on the exams it administers, which include the SAT, SAT II (SAT Subject exams), the PSAT, and the AP (Advanced Placement) exams. College Board approved for me to receive 50% extended time on all exams. During high school, I took eight standardized examinations administered by the College Board with 50% extended time. (See Exhibit 12 and 24).

16.     In 2003, I commenced my freshman year at Colby College. Based on the documentation that I provided from high school, Colby College approved for me to receive several accommodations including extended time (50%) on examinations, notes supplied for classes, extended time to complete written assignments and verbal testing to replace written examinations.

17.     In 2004, during my sophomore year of college, I received evaluations conducted by Phoebe Liss, Ph.D. (see Exhibit 6) and Ann Schoenthaler-Ervin, Ph.D. (see Exhibit 5), which I submitted to Colby College. Based on these evaluations, in addition to the accommodations that I was receiving, I was also approved for an additional accommodation, which included a foreign language waiver. (See Exhibit 13)

18.     I graduated from Colby College in the Spring 2007 and in the Fall 2007, I attended Kennebec Valley Community College (KVCC) for some additional coursework. I applied to KVCC for accommodations and was approved to receive 50% extended time on examinations and notes supplied for classes.

19.     In January 2008 and in July 2012, I took the MCAT. I did not apply for accommodations for these exams because the testing entity (AAMC) requires a current evaluation, the cost of which (typically $3,500 - $5,000) I could not afford. I put forth considerable hours over many months studying and taking practice exams. Despite all my efforts, on both administrations, I was unable to complete the exam and consequently, I was unable to demonstrate my knowledge and ability. On the 2008 administration, I scored in the 43rd to 49th percentile and on the 2012 administration, I scored in the 55th to 61st percentile. However, in some sections, I scored as low as 23rd percentile in 2008 and 26th percentile in 2012.

20.     I further attended graduate school at Rutgers University Graduate School of Biomedical Sciences (Rutgers) during the 2011-2012 school year.  Rutgers approved my request for accommodations including 50% extended time for examinations. (See Exhibit 14)

**Current Academic Accommodations**

21.     I have been attending medical school at RowanSOM since August 2013. During my matriculation at RowanSOM, I have taken numerous objective examinations and have utilized 50% extended time in accordance with my 504 Plan. (See Exhibit 23) In addition, I have also received 50% extended time on the Comprehensive Osteopathic Medical Self-Assessment Examination (COMSAE), which is a three phase computerized examination developed by Defendant and is similar to the COMLEX I. RowanSOM administers and proctors the COMSAE to its students and requires that its students pass the COMSAE Phase 1 as a prerequisite to taking the COMLEX 1. (See Exhibit 16)

22.     I also received 50% extended time on several Comprehensive Osteopathic Medical Achievement Tests (COMAT), which are a series of discrete subject matter exams in various disciplines of osteopathic medicine that are prepared by Defendant.  I was administered the Osteopathic Principles and Practice COMAT and the Psychiatry COMAT twice (once during second year and once during third year clinical rotations) and the Family Medicine COMAT at RowanSOM and was approved for and received 50% extended time for each COMAT. (See Exhibit 16)

23.     Third year students at RowanSOM are expected to attempt the COMLEX I by August 31, at the beginning of the year. (See Exhibit 17).  I am required to pass the COMLEX I in order to maintain my eligibility to proceed further in medical school.

RowanSOM has given me several extensions of time to take the COMLEX I in order to pursue my appeals for accommodations with Defendant; however, I have been advised that I must take the COMLEX I exam by January 31, 2016. (Exhibit 17).  Furthermore, passing the COMLEX I is required to graduate RowanSOM, to enter into a medical residency program and to take the COMLEX II and COMLEX III examinations.

24. A medical student's level of performance on the COMLEX I is one of the determining factors for acceptance into the highly competitive residency training programs. Accordingly, a failed attempt or poor performance on the COMLEX I can adversely impact my acceptance into a residency training program.

25. While I have been preparing extensively for many hours each day over several months, as I have done with other timed standardized examinations, I found that due to my deficits in reading, thinking, concentrating, studying and processing information, I am unable to complete the practice examination questions under standard conditions.

26. The construct and timing of the COMLEX I, which contains lengthy reading vignettes, create challenges and expose my substantial impairments of major life activities to an extreme that I have not experienced to the same degree with other standardized examinations. Accordingly, in order to demonstrate my true knowledge and achievement level, I have requested extended time on the COMLEX I.

**Application for Accommodations on the COMLEX I**

27. In or about February 2015, I submitted to the NBOME, an application for accommodations for the COMLEX I. In my application, I requested the accommodation of 50% extended time. (Exhibit 18)

28. In support of my request for accommodations, the documentation I furnished to Defendant included: (1) COMLEX Level 1 Osteopathic Medical School Questionnaire, signed on February 4, 2015 by Linda Boyd, D.O., RowanSOM Senior Associate Dean, Academic Affairs, certifying that Ms. Bibber receives 50% extended time on examinations (Exhibit 15); (2) Christine Williams, Ed.S. Rowan University Assessment and Learning Center, Psychological Evaluation, August 22, 2013 (Exhibit 3); (3) Maria Palmieri, M.A., N.J. Certified Learning Consultant, Rowan University Assessment and Learning Center, Evaluation, August 23, 2013 (Exhibit 2); (4) Christine Williams, Ed.S. and Maria L. Palmieri, M.S., Rowan University Assessment and Learning Center, Integrated Team Conclusions, September 3, 2013 (Exhibit 4); (5) Ann Schoenthaler-Ervin, Ph.D. Psychological Evaluation Report, November 2005 (Exhibit 5); (6) Phoebe Liss, Ed.D., Learning Disability Consultant Report, December 2004 (Exhibit 6); (7) My Addendum to Application for Accommodations with personal statement (Exhibit 19).

29. Defendant denied my request for accommodations in a letter dated April 2, 2015. (Exhibit 21)

30. On May 6, 2015, Hilary Freeman, Esquire, on my behalf, submitted a second request for accommodations and reconsideration of Defendant's prior denial. (See Exhibit 22). Additional documentation supporting my request for accommodations was furnished to Defendant. The additional documentation included several letters from RowanSOM's faculty stating that I receive 50% extended time and a separate room as accommodations on several medical school examinations. (See Exhibit 23). I also

submitted a document from the College Board reflecting that I received 50% extended time on the SAT, SAT Subject Tests, PSAT and AP examinations. (Exhibit 24).

31. Defendant denied my request for accommodations, by letter dated May 26, 2015, from Sydney L. Steele, Esquire. (Exhibit 25) Mr. Steele's letter asserted that the additional documentation did not alter the conclusion that I am purportedly not a person with disabilities.

32. On or about June 5, 2015, I submitted my third request for accommodations and appeal of Defendant's denials. My third appeal furnished the Defendant with additional documentation supporting my request for accommodations. The documents included: (1) James Lawrence Thomas, Ph.D. evaluation report, June 3, 2015 (Exhibit 1); (2)Diana Hanbury King, Dyslexia Specialist letter dated November 24, 2003, concerning her assessment (Exhibit 8); (3) Monmouth County Vocational School District, Section 504 Plan, October 1, 2002, providing *inter alia* extended time on tests (Exhibit 10);(4) Mark R. Serdjenian, Colby College, Associate Dean, February 11, 2005 letter, noting approval of foreign language waiver. (Exhibit 13); (5) Marge Weiner, M.S., Academic Language Therapist, January 28, 2015 letter summarizing her assessments and reading therapies from fifth to seventh grades. (Exhibit 7).

33. By letter dated June 29, 2015, Defendant for the third time denied my request for accommodations. (Exhibit 26).

34. Defendant is the only entity to have denied my request for appropriate accommodations.

**Consequences of Being Denied Accommodations**

35. I have been studying extensive hours nearly each day for the COMLEX I since February 2015. If I am not provided accommodations on the COMLEX I by the end of January 2016, I will need to continue my efforts preparing, which has been a considerable expenditure of time.

36. If I am not able to complete the COMLEX I due to the lack of appropriate accommodations, I will be unable to complete my medical school education, graduate and receive consideration for a residency position. Additionally, if I do not receive appropriate and reasonable accommodations, I will be placed at a disadvantage of competing for quality residency positions. Moreover, my medical career could end if I am not given a fair opportunity to pass the COMLEX I through the implementation of the requested appropriate accommodations.

37. My experience in requesting accommodations for the COMLEX I has been very difficult. I have spent numerous hours gathering documentation and undergoing expensive evaluations. Several highly qualified professionals, who personally evaluated and administered psychoeducational measures, have confirmed my disability. Furthermore, this experience has taken a considerable amount of time away from my medical school studies. I have further had to expend considerable personal financial resources to pursue my rights under the ADA.

38. My request for extended time is not to gain a competitive advantage; rather I am seeking to level the playing field with my non-disabled peers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___23rd___ day of December, 2015.

_____Bernadette M. Bibber_____
Bernadette M. Bibber