UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNADETTE M. BIBBER, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 15-4987<br>) |
| NATIONAL BOARD OF OSTEOPATHIC<br>MEDICAL EXAMINER, INC. | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**DECLARATION OF JAMES LAWRENCE THOMAS, PH.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

I, James Lawrence Thomas, Ph.D., submit this declaration in support of Plaintiff, Bernadette M. Bibber's request for injunctive relief in the above captioned case. If called upon to testify, I can and will testify truthfully and accurately to the facts contained herein.

1. I have a Ph.D. in Clinical Psychology from City University of New York (CUNY). My training has included American Psychological Association (APA) approved clinical psychology training at CUNY and an APA approved clinical psychology internship at Brooklyn Veterans Administration Hospital and Bellevue Psychiatric Hospital, New York, NY. I hold a professional license in the State of New York and am a current member of the APA. I have over thirty years experience diagnosing and evaluating adults for learning disabilities and Attention Deficit Hyperactivity Disorder (ADHD).

2. I have been in private practice since 1980. In this capacity, I have diagnosed and assessed hundreds individuals with learning disabilities and ADHD at the undergraduate and post-graduate level. The purpose of these assessments in many cases is to determine whether the student has a learning disability and/or ADHD, and to identify which accommodations, if any, are appropriate for use in the classroom, or on examinations or on standardized exams such as the LSAT, MCAT, Unites States Medical Licensing Exam (USMLE) or Comprehensive Osteopathic Medical Licensing Exam (COMLEX).

3. I have extensive experience in the diagnosis and assessment of individuals with learning disabilities and ADHD. A true and correct copy of my curriculum vitae detailing my professional experience and qualification is annexed as Exhibit 29.

**Overview of My Evaluation of Bernadette Bibber**

4. I personally evaluated Ms. Bibber on June 1, 2015. As part of my evaluation, I conducted a diagnostic interview, administered several measures of ability and achievement and reviewed several records that Ms. Bibber furnished. The records I reviewed included: Psychological Evaluation, Learning Assessment and Integrated Team Conclusions, August and September 2013 (Exhibits 2-4); Letter from Kai Mon Lee, Faculty, School of Osteopathic Medicine, April 29, 2015 (See Exhibit 15); Letter from Diana Hanbury King, Education expert in dyslexia, November 24, 2003 (Exhibit 8); Psychological Evaluation by Amy Schoenthaler-Ervin, Ph.D., November 28, 2005 (Exhibit 5); Learning disability evaluation by Phoebe Liss, Ed.D., December 31, 2004 (Exhibit 6); and Documentation of Dyslexia and Background, Total Learning Center, Marge Weiner, M.A. January 28, 2015 (Exhibit 7).

5. Based on my review of Ms. Bibber's documentation noted above, my own diagnostic testing and my clinical interview and observations, I concluded that Ms. Bibber is affected by a learning disability including dyslexia, visual perceptual impairments and ADHD. The current official diagnosis based on the evaluation that I conducted is Specific Learning Disorder with Impairment in Reading (DSM-V: 315.00). My diagnosis is consistent with the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–V). I further concluded that Ms. Bibber is a person with disabilities under the Americans with Disabilities Act and qualifies for appropriate accommodations including 50% extended time on the COMLEX.

6. These conclusions and my analysis of Ms. Bibber were thoroughly documented in my June 3, 2015 letter, which also responded to NBOME's April 2, 2015 denial. A copy of my letter is annexed as Exhibit 1.

7. Dyslexia is a neuro-biologically-based language impairment defined by difficulty in reading that does not result from global intellectual or motivational deficits. Dyslexia is a specific learning disability that is neurobiological in origin. It is often characterized by difficulties with accurate and/or fluent word recognition and by poor spelling and encoding abilities. Their difficulties typically result from a deficit in the phonological component of language that is often unexpected in relation to other cognitive abilities and the provision of effective classroom instruction. See, Lyon, G. R., Shaywitz, S. E. & Shaywitz, B. A. (2003). *A Definition of Dyslexia.* Annals of Dyslexia, 53, pp. 1-14. Ms. Bibber's cognitive deficits based on my evaluation, are mostly in the realm of speeded visual processing.

8. ADHD is a childhood disorder, which can continue to adolescence and adulthood. Symptoms include difficulties staying focused, difficulty paying attention, distractibility, forgetfulness, boredom with tasks, difficulty completing a task or tasks, difficulty starting a new task, difficulty processing information quickly and difficulty following instructions. *See Clinical Practice Guideline: Diagnosis and Evaluation of the Child with Attention-Deficit/Hyperactivity Disorder,* American Academy of Pediatrics, Vol. 105, No. 5, pg. 1158 (May 2000); *Driven to Distraction*, Edward Hallowell & John Ratey, Anchor Books (2011) at pg. 6-7

9. Learning disorders and ADHD are recognized psychological disorders, which are expressly identified in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–V).

10. People with learning disorders and/or ADHD can be gifted and succeed professionally in variety of demanding fields such as law, medicine, biochemistry, education, economics and business.

**Prior Psychoeducational Evaluations**

11. Phoebe Liss, Ed.D. evaluated Ms. Bibber in 2004 during her sophomore year of college. Dr. Liss administered several standardized assessments, which reflected a profile that was statistically and diagnostically significant for dyslexia. She further observed that Ms. Bibber made a significant amount of errors on tasks that required visual perceptual discrimination of letters and numbers. Dr. Liss also reported that on assessments of word reading and phonetic decoding, Ms. Bibber made errors and miscues on multisyllabic words and that her performance was ranked at several grade levels below her current grade level.

12. Ann Schoenthaler-Ervin, Ph.D. evaluated Ms. Bibber in November 2005 during Ms. Bibber's junior year for suspected ADHD. Dr. Schoenthaler-Ervin administered several standardized measures of behavior and symptoms. She concluded that Ms. Bibber endorsed attention and impulsivity problems, which fall in a clinical range. She reported that these behaviors were further supported beyond self-report.

13. Dr. Schoenthaler-Ervin also administered the Conners' Continuous Performance Test (CPT), which is a computerized neuropsychological test of attention utilized to support or rule out a diagnosis of ADHD. The results of the CPT indicated strong evidence that Ms. Bibber has attention problems. Based on Dr. Schoenthaler-Ervin's evaluation, she concluded that Ms. Bibber has ADHD and recommended psychopharmacological intervention.

14. The Psychological Evaluation, Learning Assessment and Integrated Team Conclusion conducted in August and September, 2013 (Exhibits 2-4) confirmed Ms. Bibber's diagnoses of learning disability and ADHD. Ms. Bibber's timed reading comprehension score from the Nelson-Denny Reading Test under standard time fell in the 6th percentile; however, when she was given extra time her score increased to the 99th percentile.

**Ms. Bibber's Profile Supports the Need for Extra Time as an Accommodation**

15. As noted in my June 3, 2015 letter, Ms. Bibber has very slow reading comprehension, which limits her reading, studying and test taking. She has a well documented history of dyslexia and ADHD and she has received accommodations of extra time since her earliest years of education.

16. I administered the Nelson Denny Reading Test (NDRT-Form H). Ms. Bibber was not able to complete the reading comprehension assessment in the standard time (20 minutes); rather, she answered only 23 of 38 questions with 20 answered correctly.[1] Her timed reading comprehension score fell in the 5th percentile (i.e. 95 percent of individuals scored better). This result was similar to the results in the 2013 learning assessment (Exhibit 2) where she scored in the 6th percentile. When given extended time (9 minutes 18 seconds) she completed all 38 questions with 33 answered correctly. Ms. Bibber's reading rate on the NDRT was measured to be in the 1st percentile. Furthermore, on measures of phonological processing (Speech-Sound Perception Test and Rhythm Test of the Halstead-Reitan Battery) her scored fell in the impaired ranged (1st and 2nd percentile respectively). I further observed that Ms. Bibber made 15 errors on the Speech-Sound Perception Test (a phonological processing test), which is a classic problem associated with dyslexia.

17. I also administered portions the Woodcock-Johnson Battery III and found further deficits, which included speeded visual processing (Visual Matching, 9th percentile, Pair Cancellation, 12th percentile) and rapid language processing (Rapid Picture Naming, 23rd percentile).

18. Taken as a whole, Ms. Bibber's historical documentation, prior psychological consultations and my diagnostic test results are consistent with an ADHD and learning disability profile that substantially impacts her reading speed, reading fluency, and her ability to process information.

---

[1] The Nelson Denny Reading Test is a timed reading comprehension test, which consists of seven reading

19. First, Ms. Bibber's documentation shows a long history of difficulties in reading since early childhood. This includes having difficulties with letters, which resulted in her being retained in kindergarten for two years before moving to first grade and she received specialized instruction during the summer before first grade. Moreover, in first through sixth grades, she received significant support including one-on-one instruction in reading, extended time, and a person to read questions on standardized tests. In fifth through eighth grades, Ms. Bibber also received extensive private tutoring in the Wilson Reading Program to remediate her reading deficits.

20. Second, Ms. Bibber has a history of receiving extra time as an accommodation in grade school, middle school, high school, college, graduate school and medical school. Moreover she received extended time on numerous standardized exams including eight College Board exams (e.g., SAT, SATII and AP exams) and standardized medical exams. An individual who received and benefited from accommodations in the past is important as it may accurately gauge their future need for accommodations.

21. Third, the diagnostic testing performed on Ms. Bibber by prior evaluators and myself show significant impairments in reading speed, reading fluency, visual processing, phonological processing, attention and concentration. These conclusions are confirmed by the results of the Nelson Denny Reading Test administered in 2013 and again by me in 2015. Ms. Bibber's impairments are further confirmed by select tests noted above from the Woodcock-Johnson Battery-III and Halstead-Reitan Neuropsychological Battery. Furthermore, my observations and prior evaluators observations further confirm Ms. Bibber is impaired in reading and information processing as compared to most people.

22. The nature and severity of Ms. Bibber's learning disability and ADHD are such that she does not process visual information, read and concentrate in the manner and speed that most individuals do, thus substantially limiting her ability to read, learn, think, process information, concentrate, study and take exams in her chosen career.

23. Ms. Bibber has very slow reading comprehension, which limits her functioning in the major life activities of reading and studying. Her diagnoses are supported by her history and psychometric measures taken over several years. Because Ms. Bibber reads in a manner and duration that is below average, she needs and qualifies for extended time for the COMLEX.

**Defendant's Improper Denial of Ms. Bibber's Accommodations**

24. I have also reviewed Defendant's April 2, 2015 letter denying Ms. Bibber's request for accommodations. As a professional clinician that specializes in the assessment of individuals with learning disabilities and ADHD, I disagree with Defendant's denial and its purported reasons for the denial. As noted above, not only does the diagnostic testing reflect the nature of Ms. Bibber's impairments, she has received extensive remediation in reading during her primary education and she has received the accommodations of extended time (and other accommodations) through out her entire schooling and on multiple standardized exams.

25. Defendant's denial (Nos. 1-5) contains boilerplate language concerning diagnostic standards regarding the diagnosis of ADHD and learning disabilities. Defendants points 1-5 raised in its April 2, 2015 denial contain several errors of fact. As noted above, assessment measures showed below average range in timed reading comprehension, visual processing and phonological processing. Furthermore, Ms.

Bibber's reading fluency, visual processing, and concentration are impaired in a manner and duration that is below average. Accordingly, Ms. Bibber is substantially limited in the major life activities of reading, learning, thinking, processing information, concentrating, studying and taking exams particularly for medical school. Moreover, Ms. Bibber has a well documented history of dyslexia and ADHD and she has had long history of specially designed instruction and accommodations dating back to early elementary school, which has consistently carried through to her graduate and medical school education.

26. In point No. 5 of Defendant's letter it states that the Nelson Denny Reading Test, "was within normal limits". This characterization is simply wrong. In 2013 and again on my 2015 evaluation, Ms. Bibber's NDRT reading comprehension score under standard timed administration was 6th percentile and 5th percentile respectively, which are well below average scores.

27. Defendant's denial makes no mention of Ms. Bibber's prior lengthy history of accommodations or the multiple evaluators who personally observed and evaluated Ms. Bibber and recommended accommodations. It is my understanding that the ADA gives considerable deference to a prior history of accommodations and the opinions of the candidate's evaluators. It does not appear that Defendant attributed any deference to prior accommodations or the evaluators' opinions.

28. Ms. Bibber's disability is apparent and in contrast with Defendant's conclusion, it is my expert opinion that Ms. Bibber has both a disability and is in need of at least 50% extra time as an appropriate accommodation on the COMLEX I. Ms. Bibber's need for the accommodation of extra time on the COMLEX I (and received on

similar tests in medical school) is readily apparent from a review of her extensive documentation taken as a whole and consistent with the conclusions of her past evaluators. Unless Ms. Bibber is provided the accommodation requested, the severe impact of her disabilities will prevent her from demonstrating her true skills and knowledge on the COMLEX I.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __7__ day of January, 2016.

_____
J. Lawrence Thomas, Ph.D.