## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

BERNADETTE M. BIBBER,       )
                                          )
          Plaintiff,           )
                                          )
          v.                   )      Case No. 15-4987
                                          )
NATIONAL BOARD OF OSTEOPATHIC   )
MEDICAL EXAMINERS, INC.          )
                                          )
          Defendant.         )

_____ )

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S OBJECTION FOR INJUNCTIVE RELIEF

Plaintiff, Bernadette Bibber, from the time she was in first grade, has been identified with a reading disability and received years of intensive remediation for her learning disability in reading. Throughout each level of her entire education at various institutions and on standardized exams, she has been approved for, and received, various academic accommodations, which include provisions for extended time. All psychologists that have individually evaluated her over the course of her education have concluded that she is impaired by a reading disability and attention deficit hyperactivity disorder (ADHD) and further recommended that she receive the accommodation of extended time on academic exams and standardized tests. Presently, as Ms. Bibber is reaching the end of her formal academic education, Defendant seeks to pull the rug out from under her and denies her request for accommodations. Defendant's decision is based on the recommendations of two reviewers, who never personally evaluated Ms. Bibber or even spoke with her. Defendant's denial is contrary to the American's with Disabilities Act, its regulations and guidance. It is respectfully requested

1

that this Court overrule Defendant's objection and conclude that Ms. Bibber is a person with disabilities and entitled to the appropriate accommodation of extended time.[1]

## I.     PLAINTIFF IS A PERSON WITH DISABILITIES

Defendant attempts to assert that Plaintiff is not a person with a disability because she is purportedly "an average reader when her functional abilities are compared to most people in the general population, or the average person." See Defendant's Objections at p.3. As support for its argument Defendant relies upon their consulting reviewers who opined that Plaintiff's performance on selected assessments and standardized exams such as the Medical College Admission Test (MCAT) and Graduate Records Examination (GRE) are within the average range. Essentially, Defendant submits that Ms. Bibber cannot be substantially impaired in reading compared to most people because she scored within the average range, defined between the 16th and 84th percentile, on psychometric measures and on the MCAT and GRE. Defendant has taken an overly narrow and improper analysis of Ms. Bibber's disability and failed to comply with the ADA.

Defendant's narrow and restrictive review is inconsistent with the ADA as amended (ADAAA). In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the broad scope of the ADA as Congress originally intended. 42 U.S.C. §12010(b)(6). The promulgated EEOC regulations provide in pertinent part: "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent

---

[1] After the commencement of this litigation, Plaintiff requested an independent review from an expert in the field, Mark S. Greenberg, Ph.D. who like plaintiff's other evaluators concluded that Ms. Bibber has a disability and recommended extended time; however, he recommended provisions for 25% extended time.

permitted by the terms of the ADA." 29 C.F.R. §1630.1(c)(4). *See also, Jenkins v. National Board of Medical Examiners*, 2009 U.S. App. LEXIS 2660(6th Cir. February 11, 2009). Moreover, Congress expressly stated that the "question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." 42 U.S.C. §12101(b)(5).

Defendant, however, has looked for reasons to deny her request for accommodations by focusing only on the outcome or results of certain assessments or the MCAT. Additionally, NBOME has given presumptive weight to the opinions of their own consultant reviewers who never personally evaluated or even met Ms. Bibber and essentially ignored Ms. Bibber's evaluators, who individually observed and evaluated her.

Under the ADA, a person with a disability is defined as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C 12102(1)(A). "Substantially limits" is not meant to be a demanding standard but rather is to be construed broadly and expansively. 29 C.F.R. 1630.2(j)(1)(i). In determining whether an individual is substantially impaired as compared to most people in the general population, it may be useful to consider the condition, manner and duration of time that one performs a major life activity. 29 C.F.R. 1630.2(j)(4)(i). Accordingly, the focus is not on the outcome or score on assessments or exams rather, pursuant to 29 C.F.R. §1630.2(j)(4)(iii):

> ... the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, *someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read,* write, or learn compared to most people.[2] (emphasis added).

---

[2] *See* Appendix to Part 1630-lnterpretive Guidance on Title I, 29 CFR Part 1630) ("This does not mean that disability cannot be shown where an impairment, such as a learning disability, is clinically diagnosed based in part on a disparity between an individual's aptitude and that individual's actual versus expected achievement, taking into account the person's chronological age, measured intelligence, and age appropriate education.")

The regulatory guidance provides:

> [c]ondition, manner, or duration may also suggest the amount of
> time or effort an individual has to expend when performing a
> major life activity because of the effects of an impairment, *even if*
> *the individual is able to achieve the same or similar result as*
> *someone without the impairment.* For this reason, the regulations
> include language, which says that the outcome an individual with a
> disability is able to achieve is not determinative of whether he or
> she is substantially limited in a major life activity.

Appendix to Part 1630-Interpretive Guidance on Title I, 29 C.F.R. Part 1630 (emphasis

added).[3]  See also, *Barlett v. New York St. Bd. Of Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926

*121 (S.D.N.Y. Aug. 15, 2001).[4]

  Ms. Bibber shall present evidence that she reads with a slow plodded pace, that she needs

to read passages repeatedly, that she makes mistakes with words, that she often makes mistakes

with letters (e.g. "d" instead of "b"), that she has difficulty or is unable to finish tests and exams

which are timed, that she has required years of special tutoring to learn how to ameliorate her

condition, and that her reading lacks fluency or automaticity. Accordingly, Ms. Bibber's ability

to read and learn is limited when compared to most people. Ms. Bibber cannot read passages

with the speed, fluency and automaticity as most people. The evidence will show that unlike Ms.

Bibber, most people can read and retain information without having to read a passage repeatedly.

Unlike Ms. Bibber, most people easily recognize words or do not need to think about the

---

[3] Thus, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population. As Congress emphasized in passing the Amendments Act, "[w]hen considering the condition, manner, or duration in which an individual with a specific learning disability performs a major life activity, it is critical to reject the assumption that an individual who has performed well academically cannot be substantially limited in activities such as learning, reading, writing, thinking, or speaking." 2008 Senate Statement of Managers at 8. Appendix to Part 1630-Interpretive Guidance on Title I, 29 C.F.R. Part 1630

[4]  District Judge Sotomayor wrote: "A definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent the court from making a finding of disability in the case of any individual like [Plaintiff] who is extremely bright and hardworking, and who uses alternative routes to achieve academic success."

formation of letters. Unlike Ms. Bibber, most people do not require the level of intensive and specialized reading instruction and remediation that Ms. Bibber went through from second through eighth grades. Ms. Bibber's diminish reading automaticity and reading fluency is further supported by the reports of her evaluators. cf. *Barlett v. New York St. Bd. Of Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926 *16, 24-25, 40.

Defendant's sole reliance upon the outcome of a few psychometric measures and the results of the MCAT and GRE is not consistent with ADA standards and has been rejected by decisional law. As then Judge Sotomayor wrote:

> [A]lthough these psychometric measures are relevant diagnostic tools, they cannot alone answer the question of whether an individual is substantially limited in the major life activity of reading as compared to "most people." Because the purpose of these measures is to diagnose learning disabilities, not to determine whether an individual is disabled under the ADA or Rehabilitation Act, these tests are not normed to "most people." *Bartlett,* 2001 U.S. Dist. LEXIS 11926 *71-72

Furthermore, Defendant's contention that "most people" should be defined in reference to a bell curve on standardized tests or that her scores on, for example, the MCAT, GRE or any other assessment falling within the 16th to 84th percentile is inconsistent with the ADA. *Bartlett,* 2001 U.S. Dist. LEXIS 11926 *131-132.

Furthermore, several of Ms. Bibber's assessments did fall in the below average range, which Defendant either ignores or attempts to deride the assessment and outcome. When Ms. Bibber was nearly twenty-nine years old, Maria L. Palmieri, M.A. Certified Learning Consultant evaluated her. The Nelson Denny Reading Test (NDRT)[5] was administered and Ms. Bibber was

---

[5] Defendant's consultant reviewers attempt to deride the NDRT by referring to it as a non-diagnostic test or a reading screening assessment. The evidence will show that the NDRT is a widely used assessment, which is accepted and considered by most testing entities.  In fact because the NDRT is a timed reading comprehension measure, the Law School Admission Council (who administers the LSAT) considers the NDRT the "preferred measure." http://www.lsac.org/docs/default-source/jd-docs/guidelines-for-documentation-of-cognitive-impairments.pdf. (last viewed April 3, 2016).

unable to complete this reading assessment within the twenty-minute standard time. Her reading

comprehension score on that assessment was in the 6th percentile or 10th grade equivalency. Dr.

James Lawrence Thomas administered the NDRT again (using a different form) and under

standard conditions she was once again unable to complete the assessment (answering only 23 of

38 questions) and her reading comprehension score fell in the 5th percentile.[6] Furthermore,

Defendant has ignored that on other assessments administered by Dr. Thomas her results fell in

the below average range.  For example, the chart below reflects Ms. Bibber's below average

scores on the Woodcock Johnson Test of Cognitive Abilities-III (WJ-III) and Halstead Reitan

Neuropsychological Battery (HRB):

| Woodcock Johnson-III | Percentile Score |
|---|---|
| Cognitive Efficiency | 16th percentile |
| Broad Attention | 13th percentile |
| Auditory Attention | 1st percentile |
| Visual Matching | 9th percentile |
| Pair Cancellation | 12th percentile |
| **Halstead Reitan Battery** | **Percentile** |
| Tactual Performance Test-Location | 16th percentile |
| Speech-Sound Perception Test | 1st percentile |
| Rhythm Test | 2nd percentile |
| Trail Making Test-Part B | 7th percentile |

Accordingly, even when one considers simply the outcome of the various psychometric

assessments, Ms. Bibber's evaluation data reflects several below average scores, which support

the recommendations for extended time.

This matter has many similarities to the seminal case of *Barlett v. New York St. Bd. Of

Law Exam'rs,* 2001 U.S. Dist. LEXIS 11926 *121 (S.D.N.Y. Aug. 15, 2001)  In *Bartlett*, the

plaintiff's data from various psychoeducational assessments were mostly within the average

range and much of the data was above average. For example, on the Woodcock Reading Mastery

---

[6] Defendant further attempts to alter her results by comparing her (a 30 year old) with college freshman.

Test-Revised, plaintiff ranked in the 97th percentile on the Passage Comprehension subtest, 90th percentile Overall Reading Cluster, Reading, 67th percentile on Word Attack. See, *Bartlett v. New York St. Bd. Of Law Exam'rs,* 970 F.Supp. 1094, 1105 (S.D.N.Y 1997) (subsequent history omitted). Furthermore, the plaintiff in *Bartlett,* took the LSAT, GRE, and SAT without accommodations and scored within the average range on each exam. *Bartlett*, 2001 U.S. Dist. LEXIS 11926 *119-120.  However, unlike Ms. Bibber, the plaintiff in *Bartlett* had no history of being granted accommodations or utilizing accommodations throughout her extensive educational background. Ms. Bibber has been approved and utilized accommodation throughout her extensive education including standardized examinations such as several SAT examinations and standardized examinations in medical school. The Court in *Bartlett* rejected Defendant's outcome oriented analysis and found that the plaintiff was entitled to accommodations based on the recommendations of her evaluators who had the benefit of clinical judgment and observations. *Bartlett*, 2001 U.S. Dist. LEXIS 11926 *134-140.

The prominence of the *Bartlett* decision was indeed reflected during the course of passing the ADA Amendments Act of 2008.  In a colloquy on the floor of the House of Representatives, Representative Peter Stark and then House Education Committee Chair George Miller specifically addressed the *Barlett* decision's application:

> Mr. STARK. …would the chairman agree that these amendments support the finding in Bartlett v. New York State Board of Law Examiners in which the court held that in determining whether the plaintiff was substantially limited with respect to reading, Bartlett's ability to "self-accommodate" should not be taken into consideration when determining whether she was protected by the ADA?
>
> Mr. GEORGE MILLER of California. Yes, I would.
> As we stated in the committee report on H.R. 3195, the committee supports the finding in Bartlett. Our report explains that "an individual with an impairment that substantially limits a major life activity should not be penalized when seeking protection under the

ADA simply because he or she managed their own adaptive
strategies or received informal or undocumented accommodations
that have the effect of lessening the deleterious impacts of their
disability."

Mr. STARK. I want to thank the chairman. It is indeed our full
intention to ensure that the civil rights law retains its focus on
protecting individuals with disabilities and not the interests of
entities that may need to address their practices in accordance with
the ADA.
154 Cong. Rec. H8291 (September 17, 2008)

As noted in Plaintiff's Brief supporting Plaintiff's Motion for Preliminary Injunction,

Defendant ignores the regulation promulgated under the ADA and the Department of Justice's

regulatory guidance. The regulation provides that, "[r]eports from experts who have personal

familiarity with the candidates should take precedence over those from, for example, reviewers

for testing agencies, who have never personally met the candidate or conducted the requisite

assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796[7]. See also Exhibit 27

annexed to Plaintiff's Motion. The evidence will demonstrate that Defendant accepted the

opinions of its reviewers over the opinions of Plaintiff's multiple evaluators. The evidence will

further demonstrate that this is a pattern and practice of Defendant who follows the

---

[7] During the Notice of Proposed Rule Making (NPRM) this provision was considered and testing entities including
Defendant presented commentary. See 75 Federal Register 56296-56298 (September 15, 2010). The NPRM noted
specifically:

One medical examination organization stated that the Department's preamble language would
result in persons without disabilities receiving accommodations and passing examinations as
part of a broad expansion of unwarranted accommodations, potentially endangering the health
and welfare of the general public. Another medical board ''strenuously objected'' to the ''without
further inquiry'' language. Several of the testing entities expressed concern that the Department's
preamble language might require testing companies to accept documentation from persons with
temporary or questionable disabilities, making test scores less reliable, harming persons with
legitimate entitlements, and resulting in additional expense for testing companies to accommodate
more test takers.

It remains the Department's view that, when testing entities receive documentation provided by a
qualified professional who has made an individualized assessment of an applicant that supports the
need for the modification, accommodation, or aid requested, they shall generally accept such
documentation and provide the accommodation. 75 Federal Register at 56297 (col. 1)

recommendations of their reviewers and denies requests for extended time (on matters involving a diagnosis of learning disability and/or ADHD) in excess of 70 percent of the time. As noted in Plaintiff Motion for Preliminary Injunction (at p. 29), Defendant's level of scrutiny represents the type of conduct that Congress targeted and sought to end in passing the 2008 amendments to the ADA. 154 Cong. Rec. H8296.[8]

## II.    EXTENDED TIME DOES NOT "FUNDAMENTALLY ALTER" THE COMLEX

Defendant argues that providing extended time to Plaintiff fundamentally alters the examination because the COMLEX I purportedly assesses "knowledge fluency". Defendant's argument is misplaced and lacks any legal support.

Defendant's argument fails because the ADA expressly provides that extended time on exams is an appropriate accommodation. See, 28 C.F.R. §36.309(b)(2).[9] Furthermore, Plaintiff is seeking extended time because, among other things, she has impaired reading fluency and automaticity. Her knowledge fluency is not impaired and extended time will not impact the ability to assess her knowledge fluency to the extent the COMLEX I assesses knowledge fluency.

The provisions of the ADA and decisional law do not support Defendant's argument. Defendant's argument is based on 28 C.F.R. §36.309(b)(3), which provides in pertinent part:

> A private entity offering an examination covered by this section shall provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden.

---

[8] Undersigned Counsel regrets and corrects herein a typographical error in the citation to the Congressional Record of the ADA Amendments Act legislative history noted on page 29 of Plaintiff Motion for Preliminary Injunction. The proper citation is to volume 154 Cong. Record. H8296.

[9] "Required modifications to an examination may include changes in length of time permitted for completion of the examination and adaptation of the manner in which the examination is given." 28 C.F.R. §36.309(b)(2)

This provision was intended to allow a testing entity to avoid providing a particular accommodation, if that accommodation would alter the examination for all individuals seeking such an accommodation.  For example, if an examination assesses for simple math computation, then any request for a calculator would likely be a fundamental alteration of the exam. Accordingly, this provision has been applied to a test taker with dyscalculia requesting a waiver of the math portion of a teachers qualification exam[10] or a request from an individual with dyslexia's request to use a dictionary on the essay portion of the New York State Teacher Certification examination[11] or a request to modify the scoring of a bar examination.[12] Inasmuch as Defendant has previously approved and offered the COMLEX 1 with extended time (see Defendant's Objection at p. 4 fn. 3) extended time does not fundamentally alter the skills or knowledge the examination is intended to test. Furthermore, the contention that giving extra time provides an unfair advantage to an individual with a learning disability has been rejected. *Bartlett*, 2001 U.S. Dist. LEXIS 11926 *137-138.[13]

## III.    THE STATUTORY "BEST ENSURE" STANDARD IS APPLICABLE

Defendant attempts to make a distinction that the "best ensure standard" set forth in 28 C.F.R. §36.309(b)(1)(i) does not apply to individuals with learning disabilities and/or ADHD but rather applies to some other classifications of disability. This argument is not supported by any legal citation and is in fact contrary to decisional law. See., *Love v. Law School Admission*

---

[10] See. *Jacobsen v. Tillmann*, 17 F. Supp. 2d 1018 (D. Minn. 1998)

[11] *Falchenberg v. New York State Dep't of Educ.,* 642 F. Supp. 2d 156, *aff'd* 338 Fed. Appx 11 (2009).

[12] *Florida Bd. of Bar Examiners re S.G.,* 707 So.2d 323 (FL 1998).

[13]  District Judge Sotomayor wrote: "As I noted in my first opinion and order, much of this bias appears to arise from the assumption that giving extra time to applicants with learning disabilities gives them an unfair advantage over other applicants. Bartlett I, 970 F. Supp. at 1136. However, as I noted earlier, this assumption is belied by research showing that extra time does not have a significant impact on the performance of individuals who do not have learning disabilities. See supra Findings of Fact, Section IV.A.2."

*Council,* 513 F.Supp. 2d. 206, 223 (E.D. PA 2007) ("best ensure standard" considered in context of ADHD and learning disability); *Dept. of Fair Empl. & Housing v. Law School Admission Council, Inc.,* 896 F.Supp.2d 849, 869 (28 C.F.R. §36.309(b)(1)(i) "requires test providers to "best ensure" that the examination accurately reflects aptitude and achievement levels,  not impaired skills"); *Falchenberg v. N.Y. State Dep't of Educ.,* 338 Fed.Appx, 11, 13 (In a claim involving an individual with learning disabilities, the Court noted that the standard under 28 C.F.R. §36.309(b)(1)(i) is applicable). Accordingly, Defendant's argument is without merit.

## IV.    CONCLUSION

Ms. Bibber respectfully requests that the Court grant her request for an injunction, which compels Defendant, NBOME, to provide accommodations of extended time (25% or 50%) on the COMLEX I.

By: ___/s/_____.
Charles Weiner, Esquire
PA Attorney I.D. #52926
LAW OFFICE OF CHARLES WEINER
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Tel: (267)-685-6311
Fax: (215) 604-1507
e-mail: charles@charleswinerlaw.com
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____ )

BERNADETTE M. BIBBER,                           )
                                                )
            Plaintiff,                          )
                                                )
    v.                                          )    Case No. 15-4987
                                                )
NATIONAL BOARD OF OSTEOPATHIC                   )
MEDICAL EXAMINERS, INC.                         )
                                                )
            Defendant.                          )
_____ )

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2016, I electronically filed the foregoing

Plaintiff's Response to Defendant's Objection for Injunctive Relief with the Clerk of the

Court using the CM/ECF system and have verified that such filing was sent electronically

using the CM/ECF system to the following:


Jeffrey W. McDonnell, Esq              Sydney L. Steele, Esq.
Harriet.anderson-smith.cna.com         Jennifer L. Watt, Esq.
1600 Market Street, Suite 2020         Kroger, Gardis, & Regas, LLP
Philadelphia, PA 19103                 111 Monument Circle, Suite 900
Jeffrey. mcdonnell@cna.com             Indianapolis, IN 46204
Counsel for Defendant                  sls@kgrlaw.com; jlw@kgrlaw.com
                                       Counsel for Defendant


                                       By:____/s/_____.
                                       Charles Weiner, Esquire
                                       PA Attorney I.D. #52926
                                       LAW OFFICE OF CHARLES WEINER
                            `          Cambria Corporate Center
                                       501 Cambria Avenue
                                       Bensalem, PA 19020
                                       Tel: (267)-685-6311
                                       Fax: (215) 604-1507
                                       e-mail: charles@charlesweinerlaw.com

                                       Counsel for Plaintiff